# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BET FRX LLC, on behalf of itself and derivatively on behalf of FRX GROWTH, LLC, a Delaware limited liability company,

        Plaintiff,

        v.

REBECCA MYERS, DIETRICH STEPHAN, JOY BOCHNER, THE VILLAGE OF EASTBROOK, LLC, LIPIZZANER, LLC, and CIELO E MAR, LLC,

        Defendants,

        and

FRX GROWTH, LLC,
a Delaware limited liability company,

        Nominal Defendant,

        and

FARMACEUTICALRX, LLC,

        Intervening Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2019-0894-KSJM

## MEMORANDUM OPINION

Date Submitted: February 15, 2022
Date Decided: April 27, 2022

Sean M. Brennecke, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; Jordan M. Rand, KLEHR HARRISON HARVEY BRANZBURG LLP, Philadelphia, Pennsylvania; *Counsel for Plaintiff BET FRX LLC*.

Samuel T. Hirzel, II, Jamie L. Brown, HEYMAN ENERIO GATTUSO & HIRZEL LLP,

Wilmington, Delaware; Eric R. Levine, Eric Aschkenasy, EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C., New York, New York; *Counsel for Defendants Rebecca Myers, Dietrich Stephan, Joy Bochner, the Village of Eastbrook, LLC, Lipizzaner, LLC, and Cielo E Mar, LLC*.

Geoffrey G. Grivner, Kody M. Sparks, BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; Kathleen Jones Goldman, BUCHANAN INGERSOLL & ROONEY PC, Pittsburgh, Pennsylvania; *Counsel for Intervenor FarmaceuticalRX, LLC*.

**McCORMICK, C.**

A minority member of a limited liability company sued the other members and their principals. The plaintiff alleges that after it invested eight million dollars into the nominal defendant, the other members and their principals funneled that investment into a company that they owned, and in which neither the plaintiff nor the nominal defendant had an interest. The plaintiff brought this litigation to recoup its investment. The plaintiff took a "kitchen sink" approach in the complaint, asserting claims for breach of the express and implied terms of the LLC agreement and for judicial dissolution. The plaintiff also asserted claims for breach of fiduciary duties directly and derivatively.

Most of the plaintiff's claims are clearly deficient and this decision makes quick work of them. The plaintiff's claims for breach of the express and implied terms of the LLC agreement fail because the plaintiff fails to identify any express or implied terms allegedly breached. The plaintiff's claim for judicial dissolution fails because the plaintiff does not plead any factual basis for such relief. The plaintiff's direct claim for breach of fiduciary duties fails because the alleged harm is to the nominal defendant only. That leaves one close call—the plaintiff's claim for breach of fiduciary duties asserted derivatively, which is adequately alleged. Except as to the close call, this decision grants the defendants' motion to dismiss.

I.      FACTUAL BACKGROUND

The facts are drawn from the Verified Amended Complaint (the "Amended Complaint") and exhibits thereto.[1]

_____

[1] C.A. No. 2019-0894-KSJM, Docket ("Dkt.") 31 ("Am. Compl.").

## A.   FarmaRX, FRX, And Plaintiff

FarmaceuticalRX, LLC ("FarmaRX") is a Pennsylvania company formed to obtain a Medical Marijuana Grower and Processor License (the "License") from the Commonwealth of Pennsylvania.

In 2015, Defendants Rebecca Myers, Dietrich Stephan, and Joy Bochner (collectively, the "Individual Defendants") acquired 90% of the membership interests in FarmaRX. The Individual Defendants acquired their interest through their respective investment vehicles, The Village of Eastbrook, LLC ("Eastbrook"), Lipizzaner, LLC ("Lipizzaner"), and Cielo E Mar, LLC ("Cielo," together with Eastbrook and Lipizzaner, the "LLC Defendants," and with the Individual Defendants, "Defendants").

The Pennsylvania Department of Health awarded FarmaRX the License on July 31, 2018.

Around April 2019, Myers and Stephan began searching for outside investors to fund FarmaRX's operations. To facilitate an investment, the Individual Defendants formed FRX Growth LLC ("FRX") and exchanged their interests in FarmaRX for interests in FRX. Through the transaction, FRX became the majority owner of FarmaRX. FRX has held an 85.21% membership interest in FarmaRX at all relevant times.

On May 16, 2019, Plaintiff BET FRX LLC ("Plaintiff" or "BET") acquired 50% of the membership units of FRX from the Individual Defendants for $8,000,000 (the "BET Investment"). FRX loaned the BET Investment to FarmaRX pursuant to a promissory note dated May 16, 2019.

**B.      The Governing Agreements**

In connection with Plaintiff's investment, the parties executed the First Amended and Restated Operating Agreement of FRX dated as of May 16, 2019 (the "LLC Agreement"). A few provisions of the LLC Agreement are germane to the parties' dispute.

Section 8.01 provides that FRX is to be "managed, operated, and controlled by or under the direction of" a three-member board of managers (the "FRX Board"). BET is entitled to appoint one of the Managers (the "BET Manager"). The remaining two managers are to be designated by a majority of the members other than BET. At all relevant times, Douglas Topkis has served as the BET Manager and Myers and Stephan have served as the Managers unaffiliated with BET.

Section 8.05(a) defines board quorum to require the BET Manager's presence. The upshot is that, although the FRX Board may approve most board actions by a majority vote, the BET Manager must participate in every board decision.

Section 8.05(d) identifies sixteen types of actions that require the approval of the BET Manager, which effectively grants the BET Manager a veto right over these actions. They include: dissolution of FRX; increases in the authorized number of membership units; redemption or repurchase of membership units by FRX; the issuance of additional membership units by FRX; and the incurrence by FRX of any indebtedness greater than $100,000. The list of sixteen actions does not include loans by FarmaRX or FRX to other entities nor related-party transactions.

## C. The Challenged Transaction

Myers and Stephan have an interest in an Ohio-based medical marijuana company (the "Ohio Company").[2]

Myers caused FarmaRX to loan $2 million of the BET Investment to fund the Ohio Company's growth.[3] Before filing the Amended Complaint, Plaintiff deposed Julia Wnek,

---

[2] The Amended Complaint alleges both that Myers was the sole owner of the Ohio Company and that Myers and Stephan were co-owners of the Ohio Company. *Compare id.* ¶¶ 92, 97, 103 ("[u]sing the BET Investment proceeds to pay companies wholly owned by Myers"), *with id.* ¶ 73 ("Myers' and Stephan's Ohio Company"); *id.* ¶ 74 ("Myers and Stephan utilized their control over FRX to funnel money . . . to fund operations at their Ohio Company"); *id.* ¶ 83 ("Stephan is a member of FRX's Board and an owner of the Ohio Company"). This decision gives Plaintiff the benefit of the allegation that Stephan co-owns the Ohio Company.

[3] Plaintiff's Amended Complaint and answering brief contain contradictory factual allegations. The Amended Complaint alleges that Myers and Stephan funneled money into FarmaRX. *Id.* ¶ 74. The answering brief alleges both that Myers solely funneled money to the Ohio Company and that Myers *and* Stephan funneled money to the Ohio Company. *Compare* Dkt. 37 ("Pl.'s Answering Br.") at 6 ("Myers and Stephan, acting through FRX, caused FarmaRX to issue an undocumented loan [to] the Ohio Company" (citing Am. Compl. ¶ 67)), *with id.* at 11 ("Myers used her power as a Manager of FRX to funnel FRX funds to FarmaRX for the purposes of propping up a failing entity that she and Stephan owned." (citing Am. Compl. ¶¶ 55–74)).

Additionally, while the Amended Complaint states that "[Stephan] and Myers have caused FRX to misappropriate considerable resources," the Amended Complaint only alleges actions by Myers. Am. Compl. ¶ 64 ("Myers called [Wnek] and instructed her to revise the allocation to 95/5 without providing any explanation or support for the change"); *id.* ¶ 65 ("Myers' instruct[ed] [Wnek] to saddle FarmaRX with disproportionate expenses that benefited the Ohio Company"); *id.* ¶ 67 ("Myers caused FarmaRX to make 'intercompany loans' to the Ohio Company in the approximate amount of $2 million"); *id.* ¶ 69 ("Myers directed the overwhelming majority of these loans to be allocated to FarmaRX").

Because this decision holds that Stephan's inaction in the face of Myers's self-dealing supports a non-exculpated breach of fiduciary duty, the court need not resolve whether the Amended Complaint adequately alleges that Stephan contributed directly to the alleged scheme.

formerly FarmaRX's Vice President of Finance. According to Plaintiff, Wnek admitted during her deposition "that whenever the Ohio Company had cashflow issues, FarmaRX made 'intercompany loans' to the Ohio Company without any loan documentation."[4] Those loans have not been repaid.

Plaintiff alleges that the Ohio Company had no management or administrative employees of its own and that Myers caused FarmaRX employees to perform management and administrative services for the Ohio Company. Plaintiff further alleges that Myers directed Wnek to allocate as much as 95% of the Ohio Company's payroll expenses to FarmaRX and that FarmaRX paid the Ohio Company's utility bills.

This decision refers to the transactions with the Ohio Company as the "Ohio Company Transactions."

Plaintiff alleges that Myers caused FarmaRX to engage in the Ohio Company Transactions. Plaintiff further alleges that Stephan refused to take action against Myers because he believed the monetary benefit from Myers's actions would be "life-changing."[5]

### D. This Litigation

Plaintiff filed this action on November 6, 2019.[6]

---

[4] *Id.* ¶ 59.

[5] *Id.* ¶ 83 ("Stephan admitted to BET that he knew Myers [sic] actions were wrong but refused to take action because the amount of money that he believed he would receive if he acquiesced to Myers' instructions would be 'life-changing.'").

[6] Dkt. 1.

On December 10, 2019, Defendants moved to dismiss the original complaint and FarmaRX moved to intervene and to dismiss.[7] The parties deferred briefing the motion to dismiss until the court resolved FarmaRX's motion to intervene.[8] On September 11, 2020, the Court granted FarmaRX's motion to intervene.[9]

This case sat idle for a while. On July 12, 2021, the Court sent the parties a letter requesting a status report.[10] In response, Plaintiff informed the Court that it intended to amend its original complaint.[11] Plaintiff filed the Amended Complaint on August 26, 2021, asserting the following claims:

- In Count I, Plaintiff claims that Myers and Stephan breached the LLC Agreement by misappropriating the BET Investment and failing to take corrective action.

- In Count II, asserted directly, Plaintiff claims that Myers and Stephan breached their fiduciary duties to FRX and BET by misappropriating the BET Investment and failing to take corrective action.[12]

- In Count III, asserted derivatively, Plaintiff claims that Myers and Stephan breached their fiduciary duties to FRX by misappropriating the BET Investment and failing to take corrective action.

- In Count IV, asserted in the alternative, Plaintiff claims that the LLC Defendants affiliated with Myers and Stephan, Eastbrook and Lipizzaner, breached the covenant of good faith and fair dealing implied in the LLC

---

[7] Dkt. 8; Dkt. 10.

[8] Dkt. 12.

[9] Dkt. 26.

[10] Dkt. 29.

[11] Dkt. 30.

[12] Counts II and III are asserted against the Individual Defendants, but the Amended Complaint only contains allegations against Myers and Stephan. *See* Am. Compl. ¶¶ 96–97, 102–03.

Agreement by engaging in or permitting the misappropriation of the BET Investment and failing to take corrective action.

- In Count V, asserted in the alternative, Plaintiff requests that the court should judicially dissolve FRX for failing to conform with its purpose.[13]

Defendants renewed their motion to dismiss,[14] and on October 12, 2021, intervenor FarmaRX joined Defendants' motion to dismiss.[15] The parties fully briefed the motion and the court held oral argument on February 15, 2022.[16]

## II. LEGAL ANALYSIS

Defendants have moved to dismiss the Amended Complaint pursuant to Court of Chancery Rule 12(b)(6) for failure to state a claim.

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[17] When considering a motion under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of

---

[13] Certain of Plaintiff's claims were asserted against Bochner and Cielo, but Plaintiff later abandoned those claims. *See* Pl.'s Answering Br. at 2 n.4 (stating that "[w]hile it disagrees with Defendants' contentions, BET has elected to voluntarily dismiss all claims against Defendants Joy Bochner and Cielo E Mar, LLC").

[14] Dkt. 32.

[15] Dkt. 33.

[16] Dkt. 42.

[17] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

proof."[18]  The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[19]

This analysis first addresses Plaintiff's claims for breach of the express and implied terms of the LLC Agreement, then turns to the claim for judicial dissolution, next resolves the direct claim for breach of fiduciary duties, and last addresses the derivative claim for breach of fiduciary duties.

### A.      Breach Of The LLC Agreement

BET alleges that Myers and Stephan breached the LLC Agreement by entering into the Ohio Company Transactions.

Contract terms included in or "created by an LLC operating agreement [present] a matter of contract interpretation and therefore [are] appropriate for review on a motion to dismiss."[20]  The usual principles of contract interpretation apply to claims for breach of an LLC Agreement.[21]

"To state a claim for breach of contract, a plaintiff must show the existence of a contract, a breach of the contractual obligations by the defendant, and resulting damage to

---

[18] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[19] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[20] *MKE Hldgs. Ltd. v. Schwartz*, 2019 WL 4723816, at *9 (Del. Ch. Sept. 26, 2019) (citation omitted); *see also Goddon v. Franco*, 2018 WL 3998431, at *8 (Del. Ch. Aug. 21, 2018) ("When analyzing an LLC agreement, a court applies the same principles that are used when construing and interpreting other contracts." (citations omitted)).

[21] *See Bank of N.Y. Mellon v. Commerzbank Cap. Funding Tr. II*, 2011 WL 3360024, at *7 (Del. Ch. Aug. 4, 2011) (describing the principles of contract interpretation).

the plaintiff."[22]  "In the context of limited liability companies, which are creatures . . . of contract, those duties or obligations [among parties] must be found in the LLC Agreement or some other contract."[23]

Defendants argue that Count I fails to state a claim for breach of the LLC Agreement because the Amended Complaint does not identify any provision of the LLC Agreement that Defendants allegedly breached.  Plaintiff concedes this point, admitting that the Amended Complaint does not expressly identify a provision of the LLC Agreement allegedly breached.[24]  This deficiency is typically fatal.[25]

Plaintiff argues, however, that the allegations support a claim for breach of unspecified portions of Sections 4 and 8 of the LLC Agreement, which it states grant a right to "the BET Manager to participate in all decisions."[26]  Building on this, Plaintiff argues that Defendants breached their contractual obligations because the BET Manager did not participate in the decision to approve the Ohio Company Transactions.

---

[22] *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC,* 2010 WL 363845, *10 (Del. Ch. Jan. 27, 2010) (citations omitted).

[23] *Fisk Ventures, LLC v. Segal,* 2008 WL 1961156, at *8 (Del. Ch. May 7, 2008) (citations omitted).

[24] *See* Pl.'s Answering Br. at 11 n.5 (conceding that the amended complaint "does not expressly state that the Defendants violated Section 8 of the FRX Operating Agreement").

[25] *See, e.g.*, *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (affirming dismissal of a contract claim where the plaintiff did not identify a specific contract provision imposing an obligation on the defendant).

[26] Pl.'s Answering Br. at 9; *see also id.* at 19 (stating that "Count I is a straightforward breach of contract claim - BET had a contractual right to participate in decisions of the FRX Board").

The problem with Plaintiff's theory is that Sections 4 and 8 of the LLC Agreement do not grant the BET Manager the right to participate in "all decisions" of FRX. Section 4.10 grants members the power to exercise all rights of members authorized under the Delaware LLC Act. But Plaintiff does not allege that any such statutory rights were violated. Section 8.05(a) effectively grants the BET Manager the right to participate in all FRX Board decisions. But Plaintiff does not allege that the Ohio Company Transactions were presented at a Board meeting from which the BET Manager was excluded. Section 8.05(d) effectively grants the BET Manager veto rights over certain FRX Board actions. But Plaintiff does not allege that any of the Ohio Company Transactions are within the list of sixteen transactions over which the BET Manager has veto rights. In sum, Plaintiff does not allege that Myers or Stephan breached any provision of the LLC Agreement.

Count I for breach of the LLC Agreement fails to state a claim.

## B. Breach Of The Implied Covenant

Plaintiff claims that two of the LLC Defendants, Eastbrook and Lipizzaner, breached the covenant of good faith and fair dealing implied in the LLC Agreement in connection with the Ohio Company Transactions.

"To state a claim for breach of the implied covenant, a complaint must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[27] "[T]he implied covenant 'does not apply when the

---

[27] *S'holder Representative Servs., LLC v. Albertsons Cos., Inc.*, 2021 WL 2311455, at *8 (Del. Ch. June 7, 2021) (citation and quotation marks omitted).

contract addresses the conduct at issue,' but only 'when the contract is truly silent' concerning the matter at hand."[28] In this way, "[t]he implied covenant is a limited gap-filling tool to infer contractual terms to which the parties would have agreed had they anticipated a situation they failed to address; it is not a free-floating duty or a substitute for fiduciary duty analysis."[29] "Even where the contract is silent, '[a]n interpreting court cannot use an implied covenant to re-write the agreement between the parties'"[30] because "express contractual provisions 'always supersede' the implied covenant."[31] The implied covenant is a limited remedy.[32] Its application is a "cautious enterprise."[33] A plaintiff "cannot 're-introduce fiduciary review through the backdoor of the implied covenant.'"[34]

Often, implied covenant claims flounder on the requirement that the claimant identify a specific implied contractual obligation that the defendant breached. The

---

[28] *Oxbow Carbon & Mins. Hldgs. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019) (first quoting *Nationwide Emerging Managers, LLC v. Northpointe Hldgs. LLC*, 112 A.3d 878, 896 (Del. 2015); then quoting *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1033 (Del. Ch. 2006)).

[29] *In re Encore Energy P'rs LP Unitholder Litig.*, 2012 WL 3792997, at *12 (Del. Ch. Aug. 31, 2012) (citations and quotation marks omitted).

[30] *Oxbow*, 202 A.3d at 507 (quoting *Nationwide*, 112 A.3d at 897).

[31] *Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053, at *22 (Del. Ch. Oct. 7, 2019) (quoting *Gerber v. Enter. Prods. Hldgs.*, 67 A.3d 400, 419 (Del. 2013)).

[32] *Oxbow*, 202 A.3d at 507 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010)).

[33] *Nemec*, 991 A.2d at 1125.

[34] *Encore Energy*, 2012 WL 3792997, at *13 (quoting *Lonergan v. EPE Hldgs., LLC*, 5 A.3d 1008, 1019 (Del. Ch. 2010)).

11

Amended Complaint is lacking in that regard. But the Amended Complaint fails in an even more obvious way.

Count IV is asserted against Eastbrook and Lipizzaner only. The Amended Complaint does not allege anything about these defendants aside from their association with Myers and Stephan respectively. Lipizzaner is only mentioned in the "Parties and Jurisdiction" section of the Amended Complaint. Eastbrook is only mentioned in that section and in passing on one other occasion in the Amended Complaint.[35] Thus, the Amended Complaint does not contain any well-pled allegations concerning actions taken by Eastbrook or Lipizzaner, much less that they breached some implied covenant.

Count IV for breach of the implied covenant fails to state a claim.

### C.     Judicial Dissolution

Plaintiff seeks judicial dissolution of FRX, contending that "[i]t is no longer reasonably practicable to carry out the business of FRX in conformity with the [LLC] Agreement."[36] Plaintiff does not invoke the dissolution provision of the LLC Agreement.[37] Rather, Plaintiff seeks dissolution under Section 18-802 of the Delaware LLC Act.

---

[35] Am. Compl. ¶ 82 ("While serving as a member of FRX's board of managers, Myers, through her exclusive ownership and control of The Village of Eastbrook, LLC, has misappropriated FRX's and FarmaRX's resources to benefit her Ohio Company, and has utilized hundreds of thousands of dollars of FRX money to pay her other companies, of which she is the sole owner, for purported advertising and other services that either were not provided, or which provided no benefit commensurate with the amounts paid, to FarmaRX or FRX. As a result, it is unlikely that she could impartially consider bringing an action against herself and the other Defendants.").

[36] *Id.* ¶ 114.

[37] *Id.* ¶ 113; Am. Compl., Ex. A ("LLC Agreement") § 13.01.

12

Under Section 18-802, this court may decree dissolution "[o]n application by or for a member or manager . . . of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement."[38]

"Given its extreme nature, judicial dissolution is a limited remedy that this court grants sparingly."[39] A "court will not dissolve an LLC merely because the LLC has not experienced a smooth glide to profitability or because events have not turned out exactly as the LLC's owners originally envisioned."[40] Rather, judicial dissolution is limited to "situations in which the LLC's management has become so dysfunctional or its business purpose so thwarted that it is no longer practicable to operate the business, such as in . . . a voting deadlock or where the defined purpose of the entity has become impossible to fulfill."[41] Allegations that an LLC "is currently failing to achieve its 'business plan, goals, and objectives' [or] that [its] managers have breached their fiduciary duties fall far short of this threshold."[42]

As factual support for its claim for dissolution, Plaintiff does not allege voting deadlock; nor could it. Plaintiff does not contend that FRX's purpose has become impossible to fulfill; nor could it. Instead, Plaintiff premises the claim for dissolution on

---

[38] 6 *Del. C.* § 18-802.

[39] *In re Arrow Inv. Advisors, LLC*, 2009 WL 1101682, at *2 (Del. Ch. Apr. 23, 2009) (citations omitted).

[40] *Id.* (citations omitted).

[41] *Id.* (citations omitted).

[42] *Id.* at *3 (citation omitted).

13

the sort of allegation unquestionably insufficient to support such a claim, that "[b]ecause FRX is a funding mechanism for FarmaRX, and because the members of FRX exhibit intractable differences of opinion as to the proper use of FRX funds, FRX cannot continue to carry out its business as required under the [LLC] Agreement."[43]  Mere disagreement, or even fiduciary breaches standing alone, do not support a claim for judicial dissolution.

Count V for dissolution fails to state a claim.

### D.      Direct Claim For Breach Of Fiduciary Duties

In Count II, Plaintiff asserts a direct claim that Myers and Stephan breached their fiduciary duties to FRX and BET by misappropriating the BET Investment and failing to take corrective action.[44]

As a threshold inquiry, the court must determine whether the claim is derivative or direct.  If the court determines the claim is solely derivative, then the direct claim of Count II must be dismissed.

In determining whether a claim is direct or derivative, Delaware courts apply the test established by *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, which asks: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[45]

---

[43] Am. Compl. ¶ 118.

[44] *See id.* ¶¶ 95–100.

[45] 845 A.2d 1031, 1033 (Del. 2004); *see also See Kelly v. Blum*, 2010 WL 629850, at *9 (Del. Ch. Feb. 24, 2010) (applying *Tooley* in the alternative entity context); *see also Hindlin v. Gottwald*, 2020 WL 4206570, at *6 (Del. Ch. July 22, 2020) (same).

The Amended Complaint alleges that Myers and Stephan breached their fiduciary duties by:

- Misappropriating the BET Investment proceeds and other assets of FRX and FarmaRX for the benefit of the Ohio Company;

- Using the BET Investment proceeds to pay companies wholly owned by Myers despite receiving no benefit commensurate with the amounts paid;

- Refusing to take any action at the FRX Board level to address or correct any issues at the FarmaRX level; and

- Otherwise engaging in grossly negligent or more culpable acts or omissions that have devalued FarmaRX and, therefore, FRX.[46]

The gist of each of these allegations is that Myers and Stephan took FRX assets to benefit their separate investment and devalue FRX. This is a textbook derivative claim.[47] So, with respect to the *Tooley* questions, there are easy answers. Who suffered the alleged harm? FRX. Who would receive the benefit of any recovery or other remedy? FRX. Indeed, it is difficult to be less than conclusory in this portion of the legal analysis given the dearth of allegations supporting a contrary point. Plaintiff has not alleged a direct claim for breach of fiduciary duties.

Count II fails to state a claim.

---

[46] Am. Compl. ¶ 97.

[47] *See, e.g.*, *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *3 (Del. Ch. Feb 20, 2009) ("When a director engages in self-dealing or commits waste, he takes from the corporate treasury and any recovery would flow directly back into the corporate treasury. Any benefit to the stockholders would be limited to the indirect effect on their proportional ownership or share of the venture. This is a classic derivative formulation.").

## E. Derivative Claim For Breach Of Fiduciary Duties

In Count III, Plaintiff asserts a derivative claim for breach of fiduciary duties in connection with the Ohio Company Transactions. In support of dismissal, Defendants do not invoke the demand requirement. Instead, they move right to the Rule 12(b)(6) analysis, arguing the Amended Complaint fails to allege a non-exculpated claim.

The LLC Agreement contains an exculpation clause, as is permitted under Section 18-1101(e) of the Delaware LLC Act.[48] "In the shadow of an exculpation clause, a plaintiff must plead non-exculpated claims to survive a motion to dismiss."[49] The exculpation clause at issue requires Plaintiff to show that each of Myers's and Stephan's "action[s] or failure[s] to act w[ere] not in good faith, w[ere] not in a manner reasonably believed by such Member or Manager to be consistent with such Member or Manager's duties hereunder, [or] w[ere] undertaken with gross negligence, recklessness, willful misconduct or knowing violation of law."[50]

Bad faith is found

> where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.[51]

---

[48] LLC Agreement § 14.01(a); 6 *Del. C.* § 18-1101.

[49] *DG BF, LLC v. Ray*, 2021 WL 776742, at *9 (Del. Ch. Mar. 1, 2021) (citation omitted).

[50] LLC Agreement § 14.01(a).

[51] *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (citation omitted).

16

Here, Plaintiff alleges that Myers acted with a purpose other than that of advancing the best interests of FRX. Specifically, she used her power as a Manager of FRX to direct FRX funds to the Ohio Company, through FarmaRX, to prop up a struggling entity that she and Stephan owned. FRX does not have an interest in the Ohio Company, and thus it is reasonably conceivable that FRX did not benefit from the Ohio Company Transactions. Because Myers stood to receive a personal benefit by transferring FRX funds to the Ohio Company, and it is reasonably conceivable that FRX received no benefit, this allegation represents a classic example of self-dealing that falls squarely within the definition of bad faith.[52]

As for Stephan, Plaintiff alleges that he knew that Myers was directing FRX funds to the Ohio Company but failed to take any action because it was in his best interest to do nothing.[53] As was the case for Myers, Plaintiff alleges that Stephan has an interest in the Ohio Company.

Stephan's duty to FRX is not limited to taking actions; it also encompasses "intentional[] fail[ures] to act in the face of a known duty to act."[54] It is reasonably

---

[52] *See id.* ("A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation[.]"); *Pers. Touch Hldg. Corp. v. Glaubach*, 2019 WL 937180, at \*24 (Del. Ch. Feb. 25, 2019) (stating that "the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally" (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993))).

[53] *See supra* note 3.

[54] *In re Walt Disney Co.*, 906 A.2d at 67 (citation omitted).

17

conceivable Stephan, as co-owner of the Ohio Company, knew of Myers's self-dealing in connection with the Ohio Company Transactions and failed to act because he stood to personally benefit from the influx of funds into a struggling company that he owns. Thus, this allegation too falls squarely within the definition of bad faith.[55]

The Amended Complaint alleges a non-exculpated, derivative claim for breach of fiduciary duty against Myers and Stephan.

Count III states a claim as to Myers and Stephan.

## III. CONCLUSION

Defendants' motion to dismiss is GRANTED as to Counts I, II, IV, and V, and DENIED as to Count III.

---

[55] *See id.* ("A failure to act in good faith may be shown, . . . where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.").