WAL–MART STORES, INC., a Delaware corporation, and Wachovia Bank of Georgia, N.A., in its capacity as Trustee of the Wal–Mart Stores, Inc. Corporation Grantor Trust, Plaintiffs Below, Appellants,

v.

AIG LIFE INSURANCE COMPANY, a Delaware corporation; Hartford Life Insurance Company, a Connecticut corporation; Westport Management Services, Inc., a Delaware corporation; International Corporate Marketing Group, LLC, a Delaware limited liability company; National Benefits Groups, Inc., dba Marsh Financial Services, a Minnesota corporation; Seabury & Smith, Inc., a Delaware corporation; Marsh, Inc., a Delaware corporation; and Marsh & McLennan National Marketing Corporation, now known as J & H Marsh & McLennan Private Client Services, Inc., a Delaware corporation, Defendants Below, Appellees.

No. 172,2005.

Supreme Court of Delaware.

Submitted: March 8, 2006.

Decided: June 6, 2006.

---

69. *Castle Associates,* 63 A.D.2d at 490, 407 N.Y.S.2d 717.

Robert K. Payson, and Gregory A. Inskip, of Potter, Anderson & Corroon, L.L.P., Wilmington, DE; Michael Y. Horton (argued), and David S. Cox, of Morgan, Lewis & Bockius, L.L.P., Los Angeles, CA; and Paul A. Zevnik, of Morgan, Lewis & Bockius, L.L.P., Washington, DC, of counsel, for Appellants.

Richard D. Heins, and Carolyn S. Hake, of Ashby & Geddes, Wilmington, DE, and James F. Jorden (argued), of Jorden Burt, L.L.P., Washington, DC, for Appellee AIG Life Insurance Company; R. Franklin Balotti, Lisa A. Schmidt, Michael R. Robinson, and Catherine G. Dearlove, of Richards, Layton & Finger, P.A., Wilmington, DE, and Barry A. Chasnoff (argued), of Akin, Gump, Strauss, Hauer & Feld, L.L.P., San Antonio, TX, for Appellees Hartford Life Insurance Company and International Corporation Marketing Group; Edward P. Welch, Seth M. Beausang, and James A. Whitney, of Skadden, Arps,

Slate, Meagher & Flom, L.L.P., Wilmington, DE, and Marco E. Schnabl, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York City, for Appellees Marsh Financial Services, Seabury & Smith, Inc., Marsh, Inc., and Marsh & McLennan National Marketing Corporation, formerly known as J & H Marsh & McLennan Private Client Services; and Elizabeth A. Wilburn, and Alisa E. Moen, of Blank Rome, L.L.P., Wilmington, DE, and Roger F. Cox (argued), of Blank Rome, L.L.P., Philadelphia, PA, for Appellee National Benefits Group, Inc.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and HERLIHY, Judge,[1] constituting the Court en Banc.

BERGER, Justice:

In this appeal, we consider whether the Court of Chancery correctly decided that appellants' Amended Complaint must be dismissed for failure to state a claim. The complaint purports to state several different claims arising out of appellants' purchase of corporate-owned life insurance (COLI) policies that were supposed to generate significant tax benefits. In fact, the COLI policies did not generate tax benefits and appellants allegedly suffered more than $100 million in damages. We conclude that the complaint adequately alleges a claim of fraud. The complaint adequately pleads that appellees sold appellants a product that was an economic sham designed to create enormous tax deductions. They did so knowing that their product was flawed, and without disclosing that those flaws jeopardized the favorable tax treatment that formed the basis of the deal. Accordingly, we reverse.

Factual and Procedural Background

What follows is a recital of the well-pled facts from the complaint.[2] Wal–Mart Stores, Inc. is a retail sales company with more than one million employees. From 1993 to 1995, Wal–Mart purchased COLI policies for approximately 350,000 employees as part of a plan to provide for its employees and generate revenues, primarily through tax deductions. In 1996, legislation prospectively eliminated most of the tax benefits associated with COLI plans. Shortly thereafter, the Internal Revenue Service started enforcement actions seeking to disallow pre–1996 tax deductions taken in connection with other companies' COLI plans. The IRS also challenged Wal–Mart's COLI program, and Wal–Mart suffered a substantial tax liability when it settled with the IRS in 2002. In addition, Wal–Mart was sued by its employees, and their estates, claiming that Wal–Mart had no "insurable interest" in the lives of its employees and that it should disgorge the death benefits it received.

In September 2002, Wal–Mart and a trust created as part of the COLI program filed this action against: a) AIG Life Insurance Company and Hartford Life Insurance Company (the "Insurers"); b) Westport Management Services, Inc. and International Corporate Marketing Group, LLC (the "Insurers' Representatives"); and c) National Benefits Group, Inc., Seabury and Smith, Inc., Marsh, Inc., and Marsh & McLennan National Marketing Corporation (the "Brokers"). The seven count Amended Complaint purports to

---

**1.** Sitting by designation pursuant to Art. IV, § 12 of the Delaware Construction and Supreme Court Rules 2 and 4.

**2.** On a motion to dismiss the complaint under Court of Chancery Rule 12(b)(6), the well-pled facts are assumed to be true and are reviewed in the light most favorable to the plaintiffs. *In re Tri–Star Pictures, Inc.,* 634 A.2d 319, 326 (Del.1993).

state claims for unjust enrichment, breach of fiduciary duty, equitable fraud, breach of contract, negligence, statutory consumer fraud, and declaratory relief.

For many years, businesses have purchased COLI policies for their top executives as "key man" insurance. During the 1980s, the insurance industry developed the idea of selling COLI policies for large numbers of employees. These broad-based COLI programs, unlike the original key man insurance programs, were designed to provide significant profit to the corporate policyholder through tax deductions. As structured, the corporate policyholder would pay a substantial premium in the first three years, and borrow back approximately 90% of the premium at a relatively high interest rate. The corporate policyholder then would take a tax deduction for the interest payments. Since Internal Revenue Code § 264 does not permit policy premiums to be paid through policy borrowing during years four through seven, the COLI plans provided for "loading dividends" or partial policy surrenders and cash withdrawals to cover most of the premiums for those years. Upon the death of an insured employee, the corporation, or the beneficiary it designated, would receive the policy payment. Thus, through a relatively small investment of cash, the corporation would get the benefit of a large tax deduction on its loans and the cash value of the COLI policies would accumulate interest tax free. In 1993 Wal–Mart began exploring the possibility of investing in a broad-based COLI plan. Wal–Mart hired Brokers, who were experts in COLI plans, to assist the company in soliciting proposals from insurance companies, evaluating the proposals, and negotiating terms and conditions on behalf of Wal–Mart. Insurers' Representatives presented proposals for Insurers'

COLI plans, and Brokers advised Wal–Mart to select AIG and Hartford. Brokers also advised Wal–Mart to use a Georgia grantor trust to establish the situs for the COLI policies. This was important because for the policies to be recognized as life insurance, the beneficiary must have an "insurable interest" in the employee whose life is being insured. Legislation in Georgia expressly provided that companies have an insurable interest in all of their employees.

Before purchasing any COLI policies, Wal–Mart sought and received assurances from appellees that the program was designed to eliminate or minimize the potential adverse impact of future tax law changes. One Broker allegedly assured Wal–Mart that, in the "worst case" scenario, Wal–Mart would only lose $283,000. In addition, both Insurers represented that their products were designed to comply with the requirements of IRC §§ 7702 and 264, for purposes of qualifying as life insurance policies and qualifying for interest deductions, respectively. In sum:

> The AIG Life and Hartford Life COLI plans were designed, promoted, sold, and purchased with the understanding, by all parties, that (i) the plans were constructed to conform to, and would be administered in accordance with, standard accounting, actuarial and operating principles in the life insurance industry, (ii) the plans would be financed through favorable tax treatment and, if such favorable tax treatment changed, the plans would be modified so as to eliminate or minimize adverse financial consequences to Wal–Mart, and (iii) Wal–Mart possessed an "insurable interest" in the associates covered by the plans, in conformance with the insurance laws of the State of Georgia.[3]

3. Amended Complaint, ¶ 45.

As noted above, in 1996 Congress passed a statute that effectively eliminated the tax benefits of COLI plans. In response, Wal–Mart began unwinding its COLI plans, and its COLI policies were surrendered and cancelled in 2000. Over the next two years, Wal–Mart suffered an adverse ruling in a class action claiming that Wal–Mart had no insurable interest in the lives of its employees, and it also settled a dispute with the IRS that resulted in the disallowance of most of its pre–1996 COLI interest deductions. Shortly before filing this law suit, Wal–Mart allegedly learned, among other things, that:

1) the policy loan interest rates were substantially higher than any other insurance product loan rate and had been questioned by the New York Insurance Department as well as industry insiders;

2) the "loading dividends" were not consistent with usual dividends paid in the insurance industry, either in terms of timing, amount, or internal accounting; and

3) the Connecticut Insurance Department determined that the loading dividend was not really a dividend, but a premium refund, which would not be eligible for a tax deduction.

Wal–Mart alleges that it reasonably relied on appellees' representations that they had accurately and completely described all material facts relating to the COLI plans, and that Wal–Mart would not have purchased the COLI policies had it known the true facts.

Appellees moved to dismiss the Amended Complaint. The trial court granted their motion, holding that the claims were barred by the applicable statute of limita-tions.[4] This Court reversed, stating that Wal–Mart had alleged facts from which one could reasonably infer that the statute of limitations was tolled until October 1999.[5] After remand, the trial court again granted appellees' motion to dismiss, this time for failure to state a claim on which relief could be granted.[6]

### Discussion

■■■ The standard of review in this appeal is the same as it was for the last:

> This Court reviews *de novo*, for errors of law, the dismissal of a complaint under Court of Chancery Rule 12(b)(6). Under Rule 12(b)(6), the facts alleged in the complaint are taken as true and all inferences are viewed in the light most favorable to the non-moving party.... A dismissal of the claims will be upheld only if it appears from the well-pleaded allegations of the complaint that the plaintiffs would not be entitled to relief under any set of facts that could be proven to support the claims asserted.[7]

### Count 1—Unjust Enrichment and Restitution

■■■ Wal–Mart alleges that one of the COLI plans' fundamental purposes was to provide tax benefits to the company. The COLI plans failed in that fundamental purpose and Wal–Mart suffered substantial losses. Appellees, by contrast, profited by their involvement in promoting and selling the COLI plans. Wal–Mart alleges that it would be unjust to allow appellees to retain their profits, and asks the trial court to impose a constructive trust on the money Wal–Mart paid them.

**4.** *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 2004 WL 405913 (Del.Ch. Mar. 2, 2004).

**5.** *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 860 A.2d 312 (Del.2004).

**6.** *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 872 A.2d 611 (Del.Ch.2005).

**7.** *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 860 A.2d at 318.

■ We agree with the trial court that Wal–Mart failed to state a claim under the doctrine of commercial frustration. First, that doctrine excuses future performance under a contract:

> Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary.[8]

Wal–Mart does not seek relief from any future performance under the COLI plans.

Second, Wal–Mart assumed the risk that its tax deductions would be allowed and that it had an insurable interest in all of its employees. The Amended Complaint repeatedly acknowledges the disclosed risks associated with the COLI plans, as well as Wal–Mart's interest in minimizing those risks,[9] and there are no allegations suggesting that the parties agreed to shift the risks to the appellees. Thus, Wal–Mart cannot recover under a theory of commercial frustration (or mutual mistake).[10]

### Count 2—Breach of Fiduciary Duties

Wal–Mart alleges that appellees were fiduciaries because of their expertise with respect to COLI plans, their representations to Wal–Mart, and their knowledge that Wal–Mart was relying on their expertise. Wal–Mart also alleges that appellees breached their fiduciary duties by failing to disclose material information concerning the COLI plans. Wal–Mart argues on appeal that these allegations are sufficient to state a claim for breach of fiduciary duty because: i) Brokers were acting as Wal–Mart's agents; and ii) Insurers were acting as partners with Wal–Mart.

■ The Court of Chancery properly rejected Wal–Mart's fiduciary duty claims. As the trial court noted:

> Fiduciary relationships have often been described as "special relationships," for good reason. Generally, "[a] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another."[11]

Agents are fiduciaries when they are authorized to "alter the legal relations between the principal and third persons ...."[12] Although Wal–Mart argues that Brokers were its agents, the Amended Complaint does not allege that Brokers had the authority to act on behalf of Wal–Mart, either by purchasing COLI policies or by otherwise committing Wal–Mart to an investment plan. The Court of Chancery looked beyond the "agent" label and examined the nature of the relationship as

---

8. Restatement (Second) Contracts § 265 (1981).

9. *See, e.g.:* Amended Complaint, ¶¶ 4 ("COLI plans [promoted] ... as a commonplace, low-risk means of generating annual positive cash flow...."); 40 ("Wal–Mart recognized that continued favorable tax treatment was essential to the viability of the plans...."); 42 (Wal–Mart purchased COLI policies in reliance on "advice, recommendations, and assurances provided by the defendants...."); 44 ("The 'final projections' that accompanied the issuance of the first block of AIG Life policies ... projected positive cash flow ...

of more than $9,000,000,000.... Without [the deductibility of interest payments], the COLI plan projected to produce a *loss* of nearly $2,000,000,000 over its life.") (Emphasis in original.)

10. *See* Restatement (Second) Contracts § 154 (1981).

11. *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 872 A.2d at 624 (citations omitted).

12. Restatement (Second) Agency § 12 (1958); *O'Malley v. Boris,* 742 A.2d 845 (Del.1999).

**114**

alleged in the Amended Complaint. We agree with the trial court's analysis and its conclusion:

> The court is mindful of the fact that normal business dealings (such as that of an insurance broker and its client) can sometimes take on certain aspects of a fiduciary relationship, as, for example, where the broker agrees to act as agent for the customer with power to bind the customer contractually. At the same time, however, ... it is vitally important that the exacting standards of fiduciary duties not be extended to quotidian commercial relationships....
>
> In this light, while Wal–Mart alleges that it placed trust in the broker-defendants, it does not allege sufficient facts that, if proven to be true, demonstrate that its relationship with the broker-defendants went beyond that occurring in normal commercial transactions....
>
> First, there is no alignment of interests between Wal–Mart and the broker-defendants ... Wal–Mart was trying to avoid paying the taxes it owed, while the broker-defendants were trying to make money by brokering the sale of the COLI policies ...
>
> Second, Wal–Mart does not allege any facts from which the court could reasonably infer that the broker-defendants exerted control or domination over Wal–Mart....
>
> Third, Wal–Mart does not allege facts from which the court could infer self-dealing....
>
> In sum, the relationship that is alleged to have existed between Wal–Mart and the broker-defendants was merely a normal, arm's-length business relationship.[13]

█ Wal–Mart's contention that the Insurers are fiduciaries likewise finds no support in the Amended Complaint. It is settled law that the relationship between an insurer and an insured generally is not fiduciary in character.[14] Wal–Mart acknowledges this principle, but argues that this relationship was atypical. Wal–Mart contends that it partnered with the Insurers in a joint venture where both parties would profit from Wal–Mart's borrowing. The Amended Complaint makes it clear, however, that the parties' interests were not aligned. Insurers allegedly profited from selling the COLI plans through loan spread, mortality gains, premium loadings, and investment earnings.[15] Wal–Mart, by contrast, expected to profit from the COLI policies through tax deductions.[16] In sum, the Amended Complaint alleges no facts from which one could infer that the parties were partners, or joint venturers. Thus, the breach of fiduciary duty claim fails.

### Count 3—Equitable Fraud

█ Wal–Mart claims that all appellees knew or should have known, but failed to disclose, material information about the risk that the COLI plans would not achieve their intended tax benefits because of the structural flaws in those plans. Among other things, Wal–Mart alleges that:

> [C]ertain state insurance regulators had disapproved COLI plans, such as those sold to Wal–Mart ... based on concerns relating to tax treatment, insurable interest, and deviations from acceptable accounting, actuarial, and operating

---

13. *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d at 627–28 (citations omitted).

14. *Corrado Bros., Inc. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del.1989).

15. Amended Complaint, ¶ 27.

16. Amended Complaint, ¶ 44.

principles in the life insurance industry ... [T]he AIG Life and Hartford Life COLI plans were designed and administered in a fashion that deviated from acceptable accounting, actuarial, and operating principles in the life insurance industry, with respect to the simultaneous "netting" out of premium and interest payments by way of partial withdrawals from policy cash values ... loading charges to cover insurance company expenses ... payment of dividends ... timing of dividend payments ... source of dividends ... manner in which loan interest rates were calculated[17] ...

These deviations from standard industry practice allegedly increased the risk that the COLI plans would fail, as they did, under the tax law in effect at the time Wal–Mart bought the policies. Wal–Mart claims that it sought assurances from appellees about the tax risks; that it reasonably relied on appellees to fully disclose all material information; and that had Wal–Mart known that the COLI plans were flawed in the manner alleged, it would not have purchased the policies. Finally, Wal–Mart alleges substantial damages as a result of the COLI plans' failure to produce tax benefits.

■ To state a claim for common law fraud, a party must allege:

1) a false representation, usually one of fact ...;

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or to refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and

5) damage to the plaintiff as a result of such reliance.[18]

■ Equitable fraud differs from common law fraud in one respect—the defendant need not know that the representation is false.[19] Although an expression of opinion cannot form the basis of a fraud claim, "the mere fact that a material statement is in the form of an opinion, or of an estimate, is not necessarily conclusive as to whether it must be treated as such ..."[20] Thus:

Even though the language of a representation concerns only legal consequences and is in the form of an expression of opinion, it may, as in the case of any other statement of opinion, carry with it by implication the assertion that the facts known to the maker are not incompatible with his opinion or that he does know facts that justify him in forming it.... When the recipient does not know the facts, he may justifiably rely upon these implied assertions and recover on the basis of a misrepresentation of implied fact.[21]

Similarly, a statement that is "facially true ... may constitute an actionable misrepresentation if it causes a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief."[22]

17. Amended Complaint, ¶ 80.

18. *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983).

19. *Id.*

20. *E. States Petroleum Co., Inc. v. Universal Oil Products Co.,* 3 A.2d 768, 775 (Del.Ch. 1939).

21. Restatement (Second) Torts § 545 (1977), Comment c.

22. *See Norton v. Poplos,* 443 A.2d 1, 5 (Del. 1982) (where the Court described different types of misrepresentations in its consideration of the innocent misrepresentation at issue.)

█ The Amended Complaint alleges that appellees misrepresented the viability of the COLI plans by failing to inform Wal–Mart that the plans deviated from industry standards, and that those deviations had prompted regulators to question or disapprove similar plans. These are misrepresentations of implied fact—implied in light of appellees' representations that the COLI plans were "designed" or "intended" to comply with the requirements of I.R.C. §§ 7702 and 264. In addition, a Broker allegedly advised Wal–Mart that its maximum exposure under a "worst case" scenario would be $283,000. That statement may be classified as an "estimate" or "opinion," since no one can provide absolute assurance as to future events. Nonetheless, it is the type of opinion that suggests the reasonable belief that it was based on facts known to the maker. Thus, such a statement can form the basis for an equitable fraud claim as well.

Appellees argue that this claim must be dismissed, if for no other reason, because Wal–Mart did not rely on their representations. They point to a Letter of Understanding (LOU) executed by Wal–Mart, which states:

> [Wal–Mart] has reviewed with its own legal and tax advisors all present and future implications of its ownership of the [COLI] Policies, including, but not limited to, the tax consequences of loans and/or withdrawals from the Policies and the deductibility thereof, and that it has not relied upon any representations of AIG Life or any employee, broker or agent of AIG Life in that regard.

The trial court also questioned Wal–Mart's ability to seek relief in light of this provision. We do not view the LOU as dispositive. It is an agreement with AIG Life, not with all appellees. Moreover, this provision states only that Wal–Mart relied on its own tax advisors in analyzing the risks of using COLI policies as a tax shelter, and did not rely on AIG Life "in that regard." It does not, by its terms, state that Wal–Mart was absolving AIG Life of liability for material misrepresentations as to the structural flaws in its product.

### Count 4—Breach of Contract

█ Wal–Mart alleges that appellees failed to fulfill their contractual obligations and breached their covenant of good faith and fair dealing by failing to disclose material information about the COLI plans. The Amended Complaint, however, does not identify any express contractual obligation that was breached. As for the alleged breach of the implied covenant of good faith and fair dealing:

> [T]his Court has recognized the occasional necessity of implying contract terms to ensure the parties' reasonable expectations are fulfilled. This quasi-reformation, however, should be [a] rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of ... had they thought to negotiate with respect to that matter may a party invoke the covenant's protections.[23]

As noted above, Wal–Mart has not identified any express contract provision that was breached. Nor has Wal–Mart identified any implied contract term that it would have the trial court read into the contract. Accordingly, this count fails to state a claim upon which relief may be granted.

---

23. *Dunlap v. State Farm Fire and Cas. Co.,* 878 A.2d 434, 442 (Del.2005) (internal quotation marks omitted).

#### Count 5—Negligence against Brokers

■ Wal–Mart alleges that Brokers held themselves out as professionals with special expertise in all aspects of COLI plans, and that therefore Brokers had a duty to exercise the care and skill of a "reasonably prudent business man in the insurance brokerage and consulting business ..." [24] Brokers allegedly failed to exercise that level of skill and diligence, thereby causing Wal–Mart substantial losses.

As the trial court noted, this claim appears to be another version of the rejected breach of fiduciary duty claim, but with a different label. To the extent that Wal–Mart is alleging a legally different claim based on negligence, the Amended Complaint fails to identify either the conduct that constituted a breach of the standard of care, or the manner in which that conduct proximately caused Wal–Mart injury. Accordingly, we conclude that this claim fails.

#### Count 6—Delaware Consumer Fraud Act

■ Wal–Mart's statutory claim is based on the same misrepresentations and failure to disclose discussed in connection with the equitable fraud claim. The statutory claim fails, however, because it requires that the unfair practice occur "in part or wholly within this State." [25] The Amended Complaint does not allege that any of the conduct at issue took place in Delaware.

#### Count 7—Declaratory Relief

■ Wal–Mart's final claim seeks a declaration that appellees are responsible for any losses it may incur in connection with the failed COLI plans. Wal–Mart argues that, as a matter of judicial economy, the trial court should adjudicate the parties' responsibility for damages arising from the "insurable interest" litigation against the company. The Court of Chancery viewed this claim as one for indemnification, and held that it is premature inasmuch as there are no judgments against Wal–Mart at present. We agree for the reasons stated by the trial court.[26]

Finally, there remains a question as to whether Wal–Mart's fraud claim may be heard in the Court of Chancery. There is no fiduciary relationship between the parties, and Wal–Mart seeks damages as its remedy. Although Wal–Mart characterizes its claim as one for equitable fraud, we conclude, for the reasons discussed above, that the Amended Complaint adequately alleges the elements of common law fraud as well. The parties did not address the possibility that only the fraud claim would survive, although the trial court noted:

> [E]quitable fraud does not swallow common law fraud because it can only be applied in those cases in which one of the two fundamental sources of equity jurisdiction exists: (1) an equitable right founded upon a special relationship over which equity takes jurisdiction, or (2) where equity affords a special remedy (e.g. rescission or cancellation).[27]

We decline to resolve this question of equitable jurisdiction in the first instance. The Court of Chancery will be able to consider this matter and, if appropriate, transfer this claim to the Superior Court.

24. Amended Complaint, ¶ 104.

25. 6 Del. C. § 2512.

26. *See Dana Corp. v. LTV Corp.*, 668 A.2d 752, 755 (Del.Ch.1995).

27. *Wal–Mart Stores, Inc. v. AIG Life Ins.* 872 A.2d at 629.

### Conclusion

Based on the foregoing, the decision of the Court of Chancery dismissing this action for failure to state a claim is affirmed in part and reversed in part. This matter is remanded for further proceedings in accordance with this opinion. Jurisdiction is not retained.