■ Southern Advanced Materials, LLC, Appellant-Respondent, v Robert S. Abrams, Individually and as the Trustee of Robert S. Abrams Living Trust, et al., Respondents-Appellants, et al., Defendants. Robert S. Abrams Living Trust, Plaintiff, and Robert S. Abrams, Respondent, v Southern Advanced Materials, LLC, Appellant. [56 NYS3d 299]—

Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered September 29, 2016, which, to the extent appealed from as limited by the briefs, upon defendants Robert S. Abrams and Robert S. Abrams Living Trust's (collectively the Abrams parties) motion to dismiss (under index No. 650773/15), sustained plaintiff Southern Advanced Materials, LLC's

(SAM) first cause of action, ruled that section 14.4 of the Operating Agreement is inapplicable, and dismissed the second and sixth causes of action; and, upon the Abrams plaintiffs' motion to dismiss (under index No. 650795/15), dismissed SAM's first counterclaim, unanimously modified, on the law, to vacate the ruling that section 14.4 of the Operating Agreement is inapplicable, and otherwise affirmed, without costs.

The actions concern a dispute over the proper payout to SAM, an investor in a company called CV Holdings, LLC (CVH), as a result of a sale of CVH to a third party (the Wendel transaction).

The motion court correctly sustained the first cause of action, which alleges breach of sections 9.7 and 13.3 of the Operating Agreement. While the Abrams parties claim that the Wendel transaction was an equity sale under section 14.4 of the agreement, SAM contends that it was a "[d]issolution" of CVH (as defined under section 13.1 of the agreement) entitling it to a 10% preferred return under sections 9.7 and 13.3 of the agreement. As the motion court found, the nature of the transaction at this point is unclear. Further, SAM has sufficiently shown that, as defined in the agreement, the transaction could be a "disposition" of substantially all of CVH's assets (i.e., a "dissolution"), given SAM's allegations that the Abrams parties transferred to themselves assets worth substantial amounts, including one of the four subsidiaries held by CVH, under the "Pre-Closing Restructuring" of CVH before nonparty Wendel S.A.'s purchase of the remaining equity interests.

To the extent section 14.4 may still apply, we agree with the motion court that section 14.4 does not require, as a condition precedent to obtaining a fairness opinion on the Wendel transaction, that all Class B Common Members and Preferred Members jointly request such an opinion. Nevertheless, we vacate the court's ruling to the extent it found section 14.4 inapplicable as a matter of law. While SAM alleged that it had requested a fairness opinion, the Abrams parties had argued before the court that none of the Class B Common Members or Preferred Members had requested one. These conflicting claims raise an issue of fact as to whether the condition precedent had been satisfied and therefore whether section 14.4 is applicable.

The motion court correctly dismissed the second cause of action, which alleges breach of the "Promoter Agreement" against Abrams individually. This claim is barred by the integration clause in the Operating Agreement. The agreements were between the same parties (CVH and SAM) and covered the same subject matter (SAM's right to its Preferred Return) (*see ESG*

*Capital Partners II, LP v Passport Special Opportunities Master Fund, LP*, 2015 WL 9060982, *11, 2015 Del Ch LEXIS 302, *34-35 [Dec. 16, 2015, C.A. No. 11053-VCL]). SAM's argument that the agreements involve different parties because Abrams signed the Promoter Agreement individually, and not on behalf of CVH, is belied by a reading of the agreement. SAM's remaining arguments regarding the integration clause are unavailing. In any event, even if not barred, SAM fails to state a claim against Abrams individually, as Abrams did not enter into the agreement personally.

The motion court correctly dismissed the sixth cause of action, which alleges breach of the "Make Good Agreement" against Abrams individually. Under the agreement, SAM was to receive additional preferred shares equal to one half of the number of additional shares obtained by another preferred investor, Smart Plastics. SAM alleges that additional preferred shares had been issued to Smart Plastics, but no such shares had been issued to SAM. However, even according SAM the benefit of every possible favorable inference (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), SAM's vague allegation that it believed, based solely on ."the size of the payments made to Smart Plastics in connection with the Wendel Transaction," that Smart Plastics had been issued additional shares is too speculative to support the breach of contract claim. Similarly, SAM's claimed discovery of an undisclosed $5.3 million "side note" is also too speculative to support its claim that Smart Plastics had been issued additional shares.

The motion court correctly dismissed SAM's counterclaim alleging that Abrams had fraudulently induced it into forgoing its "True-Up Option" by misrepresenting the distributions that the other preferred investors had received from the Wendel transaction. Under Delaware law, which applies here, "[c]ommon law fraud can be demonstrated in three ways: 1) overt misrepresentation; 2) silence in the face of a duty to speak; or 3) deliberate concealment of material facts" (*Bay Ctr. Apts. Owner, LLC v Emery Bay PKI, LLC*, 2009 WL 1124451, *11, 2009 Del Ch LEXIS 54, *41 [Apr. 20, 2009, C.A. No. 3658-VCS]). SAM fails to state a claim under any of these theories. In particular, SAM failed to show that the Seller Payoff Schedule submitted by the Abrams parties as part of the information package contained overt misrepresentations. Further, as the Retained Claims Agreement requires Abrams to disclose only information on the terms of the Wendel transaction, and did not require disclosure of payments made pursuant to ancillary agreements he may have had with the other investors, his

providing of the Seller Payoff Schedule did not create a false impression that required the submission of additional qualifying information (*see Wal-Mart Stores, Inc. v AIG Life Ins. Co.*, 901 A2d 106, 115 [Del 2006]; *Corporate Prop. Assoc. 14 Inc. v CHR Holding Corp.*, 2008 WL 963048, *6, 2008 Del Ch LEXIS 45, *24 [Apr. 10, 2008, C.A. No. 3231-VCS]). Nor has SAM alleged any affirmative acts to support a fraud claim under an active concealment theory (*see Bay Ctr. Apts. Owner, LLC v Emery Bay PKI, LLC*, 2009 WL 1124451, *12, 2009 Del Ch LEXIS 54, *47-48 [Apr. 20, 2009, C.A. No. 3658-VCS]). SAM's reliance on a fiduciary- and contract-based theory is misplaced. The holding in *Metro Communication Corp. BVI v Advanced Mobilecomm Tech. Inc.* (854 A2d 121, 153-154 [Del Ch 2004]) does not establish such a theory for fraud, but rather, is limited to the circumstances of that case. Concur—Renwick, J.P., Richter, Feinman, Gische and Kahn, JJ.