# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

TRUST ROBIN, INC.        )
              )
    Plaintiff,        )
              )
   v.           )    C.A. No. 2021-0806-SG
              )
TISSUE ANALYTICS, INC. and    )
NET HEALTH SYSTEMS INC.     )
              )
    Defendants.      )
              )

## MEMORANDUM OPINION

Date Submitted:  June 24, 2022
Date Decided:  September 29, 2022

Stephen C. Norman, Jaclyn C. Levy, and Charles R. Hallinan, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware, *Attorneys for Plaintiff Trust Robin, Inc*.

Gary W. Lipkin and Alexandra D. Rogin, of ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, Delaware, *Attorneys for Defendants Net Health Systems, Inc. and Tissue Analytics, Inc.*

**GLASSCOCK, Vice Chancellor**

Most jurisdictions in the Anglo-American legal system long ago merged equity and law. Of the tiny remnant of jurisdictions maintaining the distinction, Delaware is the most prominent. Our Superior Court is the court of general jurisdiction; our Court of Chancery, by contrast, is limited in its jurisdiction to matters where complete relief is unavailable at law.[1] Every plaintiff must show that the matter she seeks to pursue in Chancery is within the court's limited jurisdiction; otherwise, the matter must be dismissed or transferred to a court of law.

In this sense, the Delaware Court of Chancery is an anachronism. It is, I believe, a beneficent anachronism, one which has perceived advantages for litigants, making jurisdiction in the court desirable.[2] Nonetheless, this court takes seriously, as it must, the limits of its jurisdiction.

The instant matter alleges breach of contract and fraud in connection with a services agreement; that is, it sounds largely in tort and contract—legal causes of action seeking damages. This fact caused me to raise *sua sponte* the issue of subject-matter jurisdiction, at argument on the Defendants' Motion to Dismiss. I asked the parties to provide supplemental briefing on the issue of subject matter jurisdiction,

---

[1] Limited, that is, to equitable causes of action and cases requiring equitable relief (as well as those matters assigned to Chancery by statute).

[2] Of course, our Superior Court also has perceived advantages, and that court has occasion to reject equitable claims that litigants have attempted to shoehorn into facially legal templates.

1

and informed them that I would—indeed must—address that issue before opining on the sufficiency of the Plaintiff's pleadings under Rule 12(b)(6).

In supplemental briefing, the Plaintiff contends, *inter alia,* that the Court has jurisdiction over Plaintiff's claim of equitable fraud. That equitable action cannot be adjudged at law, and, if necessary to complete relief, provides jurisdiction over the complaint in Chancery. This jurisdictional piton, I find, is but shallowly driven into the rock of equity; nonetheless, it holds. I find that the Amended Complaint, buoyed by plaintiff-friendly inferences, states a claim for equitable fraud; that a case at law absent such a count may be insufficient; and that the equitable fraud cause of action is thus more than a makeweight version of the legal torts also alleged. I conclude that this Court has jurisdiction. My rationale is below.

## I. BACKGROUND

The instant action is before me on a motion to dismiss[3] the amended complaint (the "Amended Complaint"). The Amended Complaint contains ten counts, some of which are pled in the alternative: common law fraud, fraudulent concealment, fraudulent inducement, equitable fraud, breach of contract, tortious interference with contract, tortious interference with prospective economic advantage, unjust

---

[3] Defs.' Mot. to Dismiss the Am. Compl., Dkt. No. 21.

enrichment, civil conspiracy, and breach of the implied covenant of good faith and fair dealing.[4]

It bears repeating that this is a court of limited jurisdiction. Unless enlarged by statute, this Court's jurisdiction is limited to those cases that plead equitable causes of action or seek equitable relief. Practitioners are savvy to those limits and plead accordingly. It is incumbent upon the Court, even where parties have not moved on a subject matter jurisdiction basis, to ensure that all cases docketed here are indeed properly before the Court of Chancery. If not, I am—and the remainder of this bench is—without authority altogether.[5]

The majority of the claims pled here, as recited above, are legal in nature. Count Four, for equitable fraud, is the only indisputably equitable count pled.[6] The Amended Complaint also seeks equitable relief in the form of rescissory damages and the imposition of a constructive trust.[7] However, in considering the issue of subject matter jurisdiction, I find it sufficient to address only the equitable fraud

---

[4] Verified Am. Compl. filed on behalf of Pl. Trust Robin, Inc. ¶¶ 53–108, Dkt. No. 14 [hereinafter "Compl."].

[5] *See, e.g.*, 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court of jurisdiction of this State.").

[6] Count Eight attempts to state a claim for unjust enrichment. However, it is uncertain whether this claim is solely equitable. *Compare Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 346-47 (Del. Ch. 2022) (discussing the necessity of the "absence of a remedy at law" element in evaluating equitable jurisdiction), *with Nemec v. Shrader*, 991 A.2d 1120, 1130-31 (Del. 2010) (holding that the same element is required).

[7] *See*, *e.g.*, Compl. ¶ 74.

3

count. Because I determine that the Amended Complaint states a cause of action for equitable fraud distinct from the legal fraud also alleged, I find that there is subject matter jurisdiction here.

## A. Factual Background

What follows is an abbreviated factual summary of the case, drawing on only those facts relevant to the equitable fraud claim.[8] Plaintiff Trust Robin, Inc. ("Trust Robin") is a Canadian corporation founded in 2016 that aimed to become an early innovator in digital wound care management.[9] It planned to do so by bringing the first user-friendly digital wound technology and education platform to market, through cooperation with Defendant Tissue Analytics, Inc. ("Tissue Analytics"), a Delaware Corporation specialized in developing artificial intelligence-powered software for the healthcare sector.[10]

The two companies entered a Memorandum of Understanding, signed in October 2019, which laid out their plan to work together to market Trust Robin's iWound app and integrate it into Tissue Analytics' software platform.[11] The following month, they signed a work order (the "Work Order"),[12] under which

---

[8] Given the plaintiff-friendly standard appropriate at a motion to dismiss, the facts, except where otherwise noted, are drawn from the Plaintiff's Amended Complaint and the documents incorporated by reference therein.

[9] Compl. ¶¶ 2, 10, 20.

[10] *Id.* ¶¶ 2, 11.

[11] *Id.* ¶¶ 2, 23.

[12] Defs.' Opening Br. Supp. Mot. to Dismiss, Ex. B, Dkt. No. 12 [hereinafter "WO & MLSA"].

Tissue Analytics agreed to develop and maintain Trust Robin's software, including specified timeframes for error resolution, in exchange for a monthly fee.[13] Under these agreements, Tissue Analytics also assumed sole responsibility for meeting the development deadlines associated with a Q2 2020 completion of the iWound app.[14] On the same day, the parties also entered a Master License & Services Agreement (the "MLSA"), which provided a more comprehensive legal framework governing the work orders.[15] Notably, though the Work Order contains references to a "partnership[,]"[16] the MLSA contains a provision expressly disclaiming partnership and defining the parties' relationship as that of independent contractors.[17]

During the period in which it was negotiating the MLSA with Trust Robin, Tissue Analytics failed to disclose that it was in the midst of an acquisition by Defendant Net Health Systems, Inc. ("Net Health"), a Pennsylvania corporation.[18] Trust Robin did not learn of this acquisition until it was publicly announced in May 2020,[19] after which former Tissue Analytics representatives, now employed at Net Health, assured Trust Robin that Net Health was committed to the iWound development partnership, even suggesting that Net Health might purchase Trust

---

[13] *Id.* ¶ 26.
[14] *Id.* ¶ 4.
[15] *Id.* ¶ 26.
[16] WO & MLSA at 4.
[17] *Id.* at 21.
[18] Compl. ¶¶ 3, 12, 24.
[19] *Id.* ¶¶ 5, 33.

Robin.[20]  Based on these representations, Trust Robin continued to supply Defendants with licensing fees, its intellectual property, business plans, and lists of potential customers.[21]  Meanwhile, Defendants continued to provide assurances and deflect complaints as various iWound development deadlines came and went.[22] Defendants were able to capitalize upon these delays and disclosures by developing their own competing app, beating Trust Robin to market, and potentially landing would-be iWound customers.[23]

The companies' working relationship continued to deteriorate,[24] culminating in Trust Robin filing this action against both Tissue Analytics and Net Health in September of 2021.

## II. ANALYSIS

Plaintiff pleads a claim of equitable fraud against both defendants.[25]  I treat that claim substantively below in accordance with the applicable standard on a motion to dismiss.  The motion to dismiss standard is, of course, plaintiff-friendly, requiring me to accept all well-pled factual allegations as true, to draw all reasonable inferences in favor of the non-moving party, and permitting dismissal only if the

---

[20] *Id.* ¶ 6.
[21] *Id.* ¶ 7.
[22] *Id.*
[23] *Id.* ¶ 8.
[24] *Id.* ¶¶ 47-52.
[25] *Id.* ¶¶ 69-74.

plaintiff would not be able to recover under any reasonably conceivable set of circumstances susceptible of proof.[26]

Equitable fraud is a creature purely of equity.[27] Legal fraud, also alleged in the complaint, requires a plaintiff to show a false representation made by a defendant, the defendant's knowledge of (or reckless indifference to) the fact that the representation was false, an intent to induce the plaintiff's action (or omission), to plaintiff's detriment, and resulting damages.[28] The gravamen of a legal fraud complaint is the scienter required of the defendant's action. By contrast, equitable fraud does away with the scienter requirement—in this sense it is much broader that legal fraud.[29] In another sense, it is much narrower, because the gravamen of *equitable* fraud is the equitable relationship between the parties: only where such a special relationship exists (or under similarly compelling equities) will this court impose what amounts to a kind of strict liability for false representations on defendants.[30]

---

[26] *Parseghian as trustee of Gregory J. Parseghian Revocable Trust v. Frequency Therapeutics, Inc.*, 2022 WL 2208899, at *6 (Del. Ch. June 21, 2022) (citation omitted).

[27] *See*, *e.g.*, *Radius Servs., LLC v. Jack Corrozi Const., Inc.*, 2009 WL 3273509, at *2 (Del. Super. Ct. Sept. 30, 2009) (holding that the Court of Chancery has exclusive jurisdiction over equitable fraud claims).

[28] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983).

[29] *See*, *e.g.*, *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 143-44 (Del. Ch. 2009) (discussing differences between equitable and legal fraud).

[30] *See Dolan v. Altice USA, Inc.*, 2019 WL 2711280, at *11 (Del. Ch. June 27, 2019) (dismissing equitable fraud claim for failure to allege any special relationship); *LVI Grp. Investments, LLC v. NCM Grp. Holdings, LLC*, 2018 WL 1559936, at *18 (Del. Ch. Mar. 28, 2018); *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013 WL 6199554, at *15 (Del. Ch. Nov. 19, 2013); *Narrowstep,*

Assuming, as I must, the truth of the Plaintiff's allegations,[31] and drawing all positive inferences therefrom, I find the Plaintiff states a cause of action for equitable fraud. Here the requirements of equitable fraud—false statements or omissions on which the Plaintiff relied to its detriment—are alleged. Most importantly, the special relationship necessary to invoke equity is also alleged. The Plaintiff invites a comparison to *Narrowstep, Inc. v. Onstream Media Corp.*, a 2010 case in which this Court declined to dismiss a count of equitable fraud when "[w]hat began as arms-length commercial bargaining between the parties transitioned into Onstream controlling Narrowstep for all intents and purposes[.]"[32] Drawing on the Delaware Supreme Court's opinion in *Wal-Mart Stores v. AIG Life Ins. Co.*,[33] the *Narrowstep* Court found a special relationship, rather than a purely contractual one, based on (1) the alignment of the parties' interests; (2) Onstream's exertion of control and domination over Narrowstep; and (3) Onstream's use of that domination to engage in self-dealing.[34]

The Plaintiff has pled a set of facts less compelling than *Narrowstep*; nonetheless, they allow me to infer a special relationship. First, as in *Narrowstep*,

*Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *14 (Del. Ch. Dec. 22, 2010) (denying motion to dismiss based on successful pleading of special relationship).

[31] As generally outlined in the previous section.

[32] *Narrowstep*, 2010 WL 5422405, at *14.

[33] 901 A.2d 106, 114 (Del. 2006).

[34] *Narrowstep*, 2010 WL 5422405, at *14.

the relationship here was originally commercial in nature[35] and was (presumably) the result of arms' length bargaining. The parties' interests were, at the entry of the Work Order, also aligned contractually, as evidenced by the revenue sharing provision.[36] Second, while the Defendants did not control Trust Robin itself, in order to effectuate the parties' joint purpose, the relationship necessitated that Defendants control IP and proprietary information belonging to the Plaintiff.[37] Finally, Defendants leveraged that control of Plaintiff's property to Plaintiff's detriment and Defendants' advantage.[38] These pleadings are sufficient, in my mind, to imply a special relationship that goes beyond a mere "quotidian commercial relationship"[39] and is instead sufficient to support a claim of equitable fraud, at least on a motion to dismiss.

Further support for a special relationship comes from the Plaintiff's description of their relationship with Tissue Analytics as a "partnership," which is a relationship involving fiduciary obligation between the partners.[40] The Defendants reply, cogently, that the MLSA specifically provides that the parties "remain independent contractors," not partners.[41] This may be sufficient, on a more

---

[35] *But see*, WO & MLSA at 4 (referring to a partnership between Trust Robin and Tissue Analytics—a facially equitable relationship).
[36] Compl. ¶ 27.
[37] *Id.* ¶ 7.
[38] *Id.* ¶ 8.
[39] *Wal-Mart Stores*, 901 A.2d 106, 114 (Del. 2006).
[40] 6 *Del. C.* § 15-404.
[41] WO & MLSA at 21.

developed record, to defeat the claim of a special relationship arising out of a partnership. The problem for Defendants is that the Work Order and other documents of record *do* refer to the parties as partners.[42] At this plaintiff-friendly stage, that is sufficient to find a special relationship, in light of the facts summarized above.

Moreover, I find that there is a meaningful distinction between the equitable action and its legal fraud analogs, also pled. For instance, it is reasonably conceivable that Tissue Analytics acted falsely, but without scienter, allowing Net Health to wrongfully exploit the situation to Plaintiff's detriment. If so, an equitable fraud allegation may lie against Tissue Analytics where legal fraud would not be substantiated, based on the differing requirements of the two causes of action. Therefore, I conclude that the equitable fraud claim is not simply a makeweight equitable hook but has independent significance as an equitable claim.

Because I conclude that I have equitable jurisdiction here in light of the equitable fraud claim, I need not address the other grounds on which the Plaintiff asserts subject matter jurisdiction.

---

[42] WO & MLSA at 4.

### III. THE MOTIONS UNDER RULE (12)(B)(6).

With the exception of the equitable fraud claim addressed above, the Plaintiff's remaining claims are subject to the Defendants' pending motions to dismiss. The parties should discuss those claims in light of my decision here, and inform me within two weeks which of them remain to be decided. I will address those remaining claims promptly, without further briefing or argument.

### IV. CONCLUSION

This Court has subject matter jurisdiction over the claims in the Amended Complaint. An order is attached.

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

TRUST ROBIN, INC.,      )
                                )
           Plaintiff,       )
                                )
       v.                 ) C.A. No. 2021-0806-SG
                                )
TISSUE ANALYTICS, INC. and NET   )
HEALTH SYSTEMS INC.,        )
                                )
           Defendants.

## **ORDER**

For the reasons explained in this Court's Memorandum Opinion of September 29, 2022, this Court has subject matter jurisdiction over the claims in the amended complaint.

IT IS SO ORDERED.

 

                                      /s/ Sam Glasscock III

                                      Vice Chancellor