**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 20, 2022

Raeann Warner, Esquire
Jacobs & Crumplar, P.A.
750 Shipyard Drive, Suite 200
Wilmington, DE 19801

Loren R. Barron, Esquire
Margolis Edelstein
300 Delaware Avenue, Suite 800
Wilmington, DE 19801

> RE: ***Mark Biegler v. Underwriting Service Management Company, LLC, et al.,***
> Civil Action No. 2021-1003-MTZ

Dear Counsel:

I write to resolve the pending motion to dismiss. For the reasons set forth below, I conclude the plaintiff has failed to state a claim for negligent misrepresentation, the only basis for equitable jurisdiction. Further, I decline to exercise this Court's equitable cleanup doctrine to resolve the plaintiff's remaining legal claims. Thus, the motion to dismiss is granted in part subject to the plaintiff's right to transfer his legal claims back to the Superior Court under 10 *Del. C.* § 1902. If he elects to do so, the remainder of the motion as briefed should be transferred as well.

## I.  BACKGROUND[1]

Plaintiff Mark Biegler is a licensed insurance producer and insurance consultant.  In August 2017, nonparty Fleetlogix, Inc. began working with Biegler to find a new primary insurance policy.  Fleetlogix takes possession of returned rental vehicles and prepares them to return to the rental pool, and needs primary insurance to cover any claims while the cars are in its possession.  Biegler assembled a multiperson marketing team to find a policy meeting Fleetlogix's needs, and the team spoke with several agencies.  Biegler began working with nonparty Amy Phillips, a broker with GMI Insurance, to find coverage for Fleetlogix.

After several weeks of discussions and negotiations, Phillips presented a policy from defendant United Specialty Insurance Company, underwritten by defendant Underwriting Service Management Company, LLC ("USMC" and together, "Defendants").[2]  Biegler insisted on a few particular terms, which Defendants accepted.  Phillips gave Biegler a copy of the proposed policy, and

---

[1] On this motion to dismiss, I draw the following facts from the plaintiff's Verified Complaint, available at Docket Item ("D.I.") 1 [hereinafter "Compl."], as well as the documents attached and integral to it.  *See, e.g.*, *Himawan v. Cephalon, Inc.*, 2018 WL 6822708, at *2 (Del. Ch. Dec. 28, 2018); *In re Gardner Denver, Inc. S'holders Litig.*, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

[2] Biegler alleges that "Phillips acted as the agent of GMI, Phillips and GMI acted as the agent of USMC, and Phillips, GMI and USMC acted as agents of United Specialty." Compl. ¶ 14.

Biegler reviewed it with Fleetlogix. Biegler and Fleetlogix's general counsel reviewed the policy to ensure it accurately reflected the negotiated terms. Biegler noticed that part of the policy was excess, rather than primary. Biegler spoke with Phillips to fix this issue and Phillips confirmed to him the entire policy would be primary.

Fleetlogix chose the coverage Phillips offered. Coverage was bound on April 10, 2018, and the binder contained the negotiated terms. After receiving the policy, Biegler reviewed it again and confirmed the policy offered primary coverage and contained other specifically requested terms.

In May 2018, Fleetlogix submitted a potential claim to Phillips. Phillips informed Biegler that USMC was providing only umbrella coverage and Fleetlogix would need to get coverage through its primary insurer. At this point, Biegler spoke with United Specialty and USMC directly, pressing his view that Fleetlogix required and had been provided primary coverage. USMC conceded the policy, as written, provided primary coverage but asserted that was a mistake, and it had thought it was writing an excess policy. USMC agreed to cover Fleetlogix under the policy as written.

In June, Fleetlogix submitted more claims. On July 3, USMC sent a ten-day cancellation notice, asserting Fleetlogix lacked underlying insurance. Biegler

informed USMC the ten-day notice violated the policy's terms. USMC replaced the ten-day notice with a twenty-day notice and then a thirty-day notice of termination and cancelled the policy.

Due to the fact and nature of the cancellation, Fleetlogix terminated its relationship with Biegler and used another agent to secure replacement coverage. Biegler lost the approximately $250,000 in annual commissions he had expected to earn from his work for Fleetlogix.

On August 6, 2021, Biegler filed suit in the Superior Court against Defendants, seeking damages for his lost relationship with Fleetlogix.[3] Defendants filed a motion to dismiss, arguing the Superior Court did not have jurisdiction over his negligent misrepresentation claim.[4] In response, Biegler filed a November 16 notice of voluntary dismissal without prejudice in Superior Court,[5] and a November 19 complaint in this Court.[6]

---

[3] D.I. 10, Ex. A. Biegler also sued GMI and Phillips for negligence, breach of various duties, and negligent misrepresentation in the United States District Court for the District of Montana. These claims were dismissed, and the United States Court of Appeals for the Ninth Circuit affirmed the dismissal. *See* D.I. 11, Ex. A; *Biegler v. G.M.I. N.A. Inc.*, 2022 WL 401492, at *1 (9th Cir. Feb. 9, 2022).

[4] D.I. 10, Ex. B.

[5] *Biegler v. Underwriting Serv. Mgmt. Co., LLC*, C.A. No. N21C-08-035, D.I. 11 (Del. Super. Nov. 16, 2021).

[6] *See* Compl.

Biegler's Court of Chancery complaint presses claims for monetary damages based on negligence, negligent misrepresentation, and tortious inference with prospective contractual relations. On December 13, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.[7] The parties fully briefed the motion.[8]

For the following reasons, I conclude Biegler has failed to state a claim for negligent misrepresentation, the only basis for equitable jurisdiction. I decline to exercise this Court's equitable cleanup doctrine to resolve his remaining legal claims. So, I grant Defendants' motion to dismiss in part, and dismiss Biegler's complaint, subject to Biegler's right to transfer his legal claims back to the Superior Court under 10 *Del. C.* § 1902.

---

[7] D.I. 6 [hereinafter, MTD OB].

[8] D.I. 10 [hereinafter, MTD AB]; D.I. 11 [hereinafter, MTD RB].

## II.    ANALYSIS

"The Court of Chancery is proudly a court of limited jurisdiction."[9] "Equitable jurisdiction is a predicate issue for every matter in this court of limited jurisdiction."[10] "The Court of Chancery can exercise subject matter jurisdiction only when a case falls into one of three buckets."[11] Those buckets contain cases in which (i) "a plaintiff states an equitable claim," (ii) "a plaintiff requests equitable relief and there is no adequate remedy at law," and (iii) "jurisdiction exists by statute."[12] "The claim of negligent [] misrepresentation falls within the first category."[13]

Biegler asserts this Court's jurisdiction is predicated on Count II's claim for negligent misrepresentation.[14] If Count II fails to state a claim, this Court may

---

[9] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019); *see also Pike Creek Recreational Servs., LLC v. New Castle Cnty.*, 238 A.3d 208, 212 (Del. Super. 2020) ("Delaware proudly guards the historic and important distinction between legal and equitable jurisdiction." (internal quotation marks omitted) (quoting *Weston Invs., Inc. v. Domtar Indus., Inc.*, 2002 WL 31011141, at *1 (Del. Super. Sept. 4, 2002))).

[10] *Preston Hollow Cap., LLC v. Nuveen, LLC*, 2019 WL 3801471, at *4 (Del. Ch. Aug. 13, 2019) (citing *Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019)).

[11] *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *5 (Del. Ch. Oct. 5, 2018); *see also Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

[12] *Delawareans for Educ. Opportunity*, 2018 WL 4849935, at *5.

[13] *Mark Fox Grp., Inc. v. E.I. duPont de Nemours & Co.*, 2003 WL 21524886, at *5 (Del. Ch. July 2, 2003).

[14] MTD AB at 4.

decline to exercise subject matter jurisdiction over Biegler's remaining legal claims.[15]

"Negligent misrepresentation—also known as equitable fraud—is separate from, and broader, than common law fraud, such that generally whatever amounts to common law fraud also amounts to equitable fraud."[16]  But this broader fraud claim "is not available in every case or to every plaintiff.  It requires special equities, typically the existence of some form of fiduciary relationship, such as that between a director and stockholder or a trustee and *cestui que trust* . . . ."[17]  "The 'special

---

[15] *Zebroski v. Progressive Direct Ins. Co.*, 2014 WL 2156984, at \*9 (Del. Ch. Apr. 30, 2014).

[16] *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at \*5 (Del. Ch. Oct. 30, 2015) (internal quotations and citations omitted); *see also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.* ("*Wal-Mart II*"), 901 A.2d 106, 117 (Del. 2006) (noting equitable fraud requires a "special relationship over which equity takes jurisdiction"); *Ameristar Casinos, Inc. v. Resorts Int'l Hldgs., LLC*, 2010 WL 1875631, at \*12 (Del. Ch. May 11, 2010).

[17] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.3d 126, 144 (Del. Ch. 2009) (citing *U.S. W., Inc. v. Time Warner, Inc.*, 1996 WL 307445, at \*24 (Del. Ch. June 6, 1996)); *accord*, *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at \*13 (Del. Ch. Dec. 22, 2010); *Yu*, 2017 WL 2889515, at \*4.  A negligent misrepresentation claim also lies if the claim seeks "a remedy that only equity can afford." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at \*9 (Del. Ch. Jan. 30, 2015); *accord*, *Ameristar Casinos*, 2010 WL 1875631, at \*12 (offering as examples rescission, cancellation, and constructive trust).  But Biegler seeks only monetary damages. Compl., Prayer for Relief ¶¶ (a)–(e).

equities' that can provide a basis for equitable fraud are relationships more akin to fiduciary duties or trustee relationships."[18]

"[G]enerally, [a] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to protect the interests of another."[19]

> A fiduciary relationship implies a dependence, and a condition of superiority, of one party to another. A fiduciary relationship exists where one party places a special trust in another and relies on that trust, or where a special duty exists for one party to protect the interests of another. It generally requires confidence reposed by one side and domination and influence exercised by the other.[20]

"Delaware courts, however, have been reluctant to impute the exacting principles of fiduciary relationships to those engaged in normal commercial dealings."[21]

---

[18] *Doberstein*, 2015 WL 6606484, at *5.

[19] *Zebroski*, 2014 WL 2156984, at *8 (quoting *Cheese Shop Int'l, Inc. v. Steele*, 303 A.2d 689, 690 (Del. Ch. 1973) (second alteration in original) (internal quotation marks omitted).

[20] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.* ("*Wal-Mart I*"), 872 A.2d 611, 624–25 (Del. Ch. 2005) (internal citations and quotations omitted).

[21] *Zebroski*, 2014 WL 2156984, at *8 (citing *Wal-Mart II*, 901 A.2d at 114); *accord Wal-Mart I*, 872 A.2d at 625 (citing *Bird's Constr. v. Milton Equestrian Ctr.*, 2001 WL 1528956, at *4 (Del. Ch. Nov. 16, 2001) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 604 (Del. Ch. 1987))); *see also Addy v. Piedmonte*, 2009 WL 707641, at *17 (Del. Ch. Mar. 18, 2009) (observing "this Court is chary of expanding the scope of fiduciary duty to a broad set of commercial relationships which traditionally has been regulated by normal market conditions, rather than the scrupulous concerns of equity for persons in special relationships of trust and confidence") (citing *Wal-Mart I*, 872 A.2d at 628).

"Sophisticated contractual parties who bargain at arm's length generally do not qualify for the kind of equitable protection that the negligent misrepresentation doctrine envisions in this regard."[22]

Delaware law has emphasized the arm's-length and commercial nature of relationships in the insurance negotiation and procurement setting.[23] "It is settled law that an insurer does not generally owe a fiduciary duty to its insured because this relationship is usually an arm's-length contractual relationship."[24] In *Wal-Mart Stores, Inc. v. AIG Life Insurance Company*, this Court considered the more attenuated relationship between an insurance broker and its client, where the client sought recovery from brokers who procured policies that did not serve the client's tax purposes.[25] This Court began from the premise that

---

[22] *Doberstein*, 2015 WL 6606484, at *5; *accord Addy*, 2009 WL 707641, at *17 ("Bargained-for commercial relationships between sophisticated parties do not give rise to fiduciary duties." (citing *Prestancia Mgmt. Grp., Inc. v. Va. Heritage Found., II LLC*, 2005 WL 1364616, at *6 (Del. Ch. May 27, 2005))).

[23] *See, e.g.*, *Wal-Mart II*, 901 A.2d at 114–16; *Wal-Mart I*, 872 A.2d at 626–28; *Zebroski*, 2014 WL 2156984, at *8; *Fansler v. N. Am. Title Ins. Co.*, 2019 WL 1281432, at *5 (Del. Super. Mar. 19, 2019) .

[24] *Wal-Mart I*, 872 A.2d at 626 (citations omitted).

[25] *Id.* at 618–19.

> it is vitally important that the exacting standards of fiduciary duties not be extended to quotidian commercial relationships. This is true both to protect participants in such normal market activities from unexpected sources of liability against which they were unable to protect themselves and, perhaps more important, to prevent an erosion of the exacting standards applied by courts of equity to persons found to stand in a fiduciary relationship to others.[26]

From there, Vice Chancellor Lamb considered that the client and the broker were not aligned: the client wanted a policy with particular features, while the broker was trying to make money by brokering the sale and causing the client to buy a policy.[27] Nor did the client plead facts supporting the inference that the broker exerted control or domination over the client or coerced it; rather, the client made the decision to purchase the insurance policies and sought out the broker to facilitate those purchases.[28] And the broker had no power to take action on the client's behalf.[29] This Court was unwilling to infer the client depended on the broker to such an extent as to invoke the power of equity to regulate fiduciary relationships, and concluded the broker-client relationship was "merely a normal, arm's-length business

---

[26] *Id.* at 627.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 628.

relationship" that could not support a claim for equitable fraud.[30]  The Delaware Supreme Court agreed.[31]

This reasoning applies with more force to Biegler's even more attenuated relationship with Defendants, between himself as a consultant for a client working through a broker to negotiate a policy, and Defendants as the underwriter and provider.  Biegler worked with a marketing team and a broker to identify a policy from an insurance company that would fit his client's needs, and negotiated through that broker to fashion a policy from Defendants that was ultimately presented to and purchased by Fleetlogix.[32]  Biegler negotiated for certain terms and double-checked the insurance documents to ensure all material and negotiated terms were accurate, demonstrating he did not rely on or necessarily trust Defendants to look out for his or his client's interests.  Each party in that relationship is a professional engaged in arm's length negotiations; their interests are divergent, with each side trying to obtain the better part of the bargain, and none controls another.  Biegler's relationship with Defendants was a commercial, arm's length business relationship,

---

[30] *Id.* at 628–29.

[31] *Wal-Mart II*, 901 A.2d at 113–14.

[32] Compl. ¶¶ 9–12.

not a fiduciary relationship.[33]  As Biegler has not pled the existence of a special or fiduciary relationship, he fails to state a claim for negligent misrepresentation.

The rest of Biegler's claims are legal in nature.  While this Court retains the power to decide those claims under the cleanup doctrine, it may decline to exercise that jurisdiction where, as here, this Court has not made any factual determinations.[34]  Given my duty to preserve the boundaries of this Court's subject matter jurisdiction and my lack of factual findings in this matter, I decline to exercise cleanup jurisdiction over Biegler's legal claims and request for legal relief.

### III.  CONCLUSION

For the foregoing reasons, the motion is **GRANTED in part** subject to Biegler's right to transfer his legal claims back to the Superior Court under 10 *Del. C.* § 1902.  If he elects to do so, the remainder of the motion as briefed should be transferred as well.

---

[33] *Cf. Narrowstep*, 2010 WL 5422405, at *14 (finding a special type of relationship necessary to state a claim for equitable control where "(1) the parties' interests were purportedly aligned in that [defendant] took over operational control of [plaintiff] to 'create synergies and cost savings for [plaintiff]' in preparation for an expeditious closing; (2) [defendant] controlled and dominated [plaintiff's] operations, even before the deal closed; and (3) [defendant] used such control and domination during the time between entering the Agreement and terminating it to pilfer [plaintiff's] assets at [plaintiff's] expense") (citations omitted).

[34] *Zebroski*, 2014 WL 2156984, at *9.

       Sincerely,

       */s/ Morgan T. Zurn*

       Vice Chancellor


MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*