# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

Mr. Josiah R. Wolcott, Esquire,
CONOLLY GALLAGHER, LLP,
267 East Main Street,
Newark, Delaware 19711

Mr. Sam Tang
94 Jessica Lyn Drive,
Dover, Delaware 19904

Submitted: August 25, 2023
Decided:    October 5, 2023

RE:   *Dover Mall, LLC v. Sam Tang,*
      **C.A. No. K22C-07-013 JJC**

Mr. Wolcott and Mr. Tang:

This letter provides the Court's decision regarding Plaintiff Dover Mall, LLC's motion for summary judgment. Defendant Sam Tang rented a store at the Dover Mall to operate a nail salon, but his business lost viability in early 2020 during the State-mandated closure that accompanied the COVID-19 pandemic. He defaulted under his commercial lease and Plaintiff Dover Mall, LLC (hereafter "Dover Mall" or "Mall") sues him for unpaid rent and damages caused by his alleged breach. Presently, Dover Mall alleges that summary judgment in its favor is appropriate because: (1) the parties entered a binding lease agreement; (2) Mr. Tang defaulted; and (3) the lease's terms bar Mr. Tang's affirmative defenses.

Mr. Tang concedes that he had the obligation to pay rent and that he stopped doing so during the pandemic. He contends, however, that the pandemic frustrated

the lease's purpose and made his performance impossible. Separately, he contends that Dover Mall's declining occupancy rate and accompanying decrease in foot traffic prior to the pandemic further frustrated the lease's purpose. That, he also contends, separately excused his default. Finally, he contends that Dover Mall had a duty to mitigate its damages by reletting the store, but failed to do so. In sum, he asserts that summary judgment is inappropriate because issues of fact remain regarding his affirmative defenses of frustration of purpose, impossibility of performance, and the Dover Mall's failure to mitigate its damages by reletting the store.

For the reasons discussed below, most of Mr. Tang's affirmative defenses are unavailable as a matter of law because the *force majeure* provision in his lease allocated the risk of the pandemic-related government closure to him. The provision explicitly (1) contemplated a State-mandated closure, (2) relieved Dover Mall of its obligation to provide access to the premises during the closure, but nevertheless (3) preserved Mr. Tang's obligation to pay rent. Elsewhere in the lease, Mr. Tang assumed the responsibility to pay the balance of rent owed for the entire lease term upon default. Because there are no material issues of fact regarding his liability to pay rent from April 2020 through the end of his lease, summary judgment must be granted as to liability.

On the issue of damages, Mr. Tang focuses on the Dover Mall's failure to relet the premises after he voluntarily surrendered possession. As explained below, the lease unambiguously relieved Dover Mall of any common law duty to mitigate damages by reletting. While the Court is sympathetic to Mr. Tang's situation, it cannot apply the law differently in this situation because he signed the lease in his individual capacity. The terms in this commercial lease require the Court to enter judgment in Dover Mall's favor.

2

## The Record and Procedural Background

The summary judgment record includes the exhibits offered by the parties, undisputed facts as confirmed by the pleadings, Mr. Tang's affidavit, and the terms of the lease. In 2014, the landlord, Dover Mall, and the tenant, Mr. Tang, entered an eight-year lease of commercial property in the mall.[1] Mr. Tang rented the property to operate a nail salon in his individual capacity.[2] He operated his business until March 2020, when COVID-19 began its accelerated spread domestically.[3] On March 18, 2020, Dover Mall voluntarily closed the entire mall which forced Mr. Tang to close his salon.[4] Approximately four days later, the Governor issued the first of a series of executive orders that closed all non-essential businesses in the State.[5] Over the next several months, the Governor issued successive executive orders that permitted various businesses in the State to reopen, but nail salons were among the last industries permitted to return to work.[6] Given the length of the mandated closure, Mr. Tang's business lost viability, and he ceased paying rent after March 2020.[7]

The lease allocated certain risks between the parties. At the forefront is the lease's *force majeure* provision which provided, in part, the following:

> [i]f either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure material, failure of power, *restrictive governmental laws or regulations*, riots, insurrection, war, environmental remediation work whether ordered by any governmental body or voluntarily initiated or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under

---

[1] D.I. 16.
[2] Answ. (D.I. 4).
[3] *Id*. at 6.
[4] *Id*.
[5] *Id*., Exs. A & B.
[6] D.I. 4.
[7] *Id*.

3

this Lease, the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. *Notwithstanding the foregoing, [this provision] shall at no time operate to excuse the Tenant from . . . any obligations for payment of Minimum Annual Rent, Percentage Rent, additional rent or any other payments required by the terms of this Lease when the same are due, and all such amounts shall be paid when due.*[8]

Separately, the parties' lease defined a default as a failure to pay any amount due under the lease.[9] In addition, the lease entitled Dover Mall to choose between alternative remedies in the event Mr. Tang defaulted. Namely, it granted Dover Mall the option to re-enter and take possession and then to *either* (1) demand payment for the balance of any unpaid rent and future rent through the remainder of the lease term, *or* (2) relet the property and credit that recovery to the amount Mr. Tang owed.[10] Specifically, the provision provided the following, in relevant part:

> [i]f Landlord re-enters the Premises . . . or if it takes possession pursuant to legal proceedings or otherwise, *it may either terminate this lease, but Tenant shall remain liable for all obligations arising during the balance of the original stated term* as hereafter provided as if this Lease had remained in full force and effect, *or* it may . . . relet the Premises . . . for such term . . . Notwithstanding any such reletting, . . . Landlord may . . . may recover from Tenant *all damages incurred by reason of such breach or default,* including . . . an amount *equal to the difference between the Minimum Rent and all items of additional rents reserved hereunder for the period which otherwise would have constituted the balance of the Lease Term* . . . all of which shall immediately be due and payable by Tenant to Landlord.[11]

During the fall of 2021, Dover Mall notified Mr. Tang that he breached the lease because he had stopped paying rent. It demanded that he cure his breach within seven days.[12] It then brought a summary possession action against Mr. Tang in

---

[8] D.I. 16 at § 24.5 (emphasis added).
[9] *Id*. at § 18.1.
[10] *Id*. at § 18.2.
[11] *Id*. (emphasis added).
[12] Compl. (D.I. 1), Ex. B.

4

Justice of the Peace Court No. 16.[13]   With that suit pending, Mr. Tang voluntarily surrendered possession of the premises at some point in November 2021.[14]   Dover Mall then withdrew its claim, and the Justice of the Peace Court dismissed the case.[15] To date, Dover Mall has not relet the premises.[16]

Dover Mall then filed the present suit seeking $276,089.72 for unpaid rent, accelerated rent, and other charges.[17]   Mr. Tang countered in his answer that Dover Mall failed to mitigate its damages and relies on common law contract defenses to excuse his duty to pay.[18]

Presently, Dover Mall seeks summary judgment and Mr. Tang opposes the motion.  On August 24, 2023, the Court heard oral argument and reserved decision. At that point, neither party had provided the Court a complete copy of the lease so the Court requested it;  Dover Mall then supplemented the summary judgment record with the entire lease.[19]

## Standard for Summary Judgment

Summary judgment is appropriate when a moving party demonstrates that there are no genuine issues of material fact and that judgment as a matter of law is appropriate.[20]   When deciding a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party.[21]   In that light, the moving

---

[13] D.I. 4.
[14] *Id.*
[15] *Id.*
[16] Dover Mall represented that it has attempted to relet the Premises over the relevant time but has supplemented the record with no evidence to substantiate its efforts.
[17] D.I. 1 at ¶ 15.  At oral argument, Dover Mall clarified that the amount it identified in Ex. B to its motion, $276,089.72, is the amount that it now seeks.
[18] *See* D.I. 4 (asserting that the Mall's voluntary closure was an unforeseeable event that frustrated the purpose of the lease and its inability to fill the stores before the pandemic reduced foot traffic and customers).
[19] D.I. 16.
[20] Super. Ct. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[21] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

party first bears the burden of persuasion.[22]   If the moving party meets its initial burden, the burden then shifts to the non-moving party to demonstrate a dispute of material fact.[23]   To survive a motion for summary judgment, the non-movant must identify a question of material fact that would allow a rational jury to decide the matter in his or her favor.[24]

### Discussion

Summary judgment in favor of Dover Mall is appropriate for two reasons. First, the lease's *force majeure* provision allocated risk for the pandemic to Mr. Tang and precludes his affirmative defenses of impossibility and frustration of purpose. Second, the lease provided Dover Mall the option to either relet the premises *or* sue immediately upon breach for the accelerated recovery of rent due over the balance of the lease's term.  The Court will address both issues in series.

At the outset, Delaware law excludes commercial leases from the requirements of Delaware's Landlord Tenant Code, except for the provisions that relate to summary possession procedures.[25]  Accordingly, general contract principles govern the parties' rights, obligations, and remedies under a commercial lease agreement.[26]  The general rules of contract construction require a court to construe a contract "as a whole, to give effect to the intentions of the parties[, and w]here the contract's language is clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[27]  An ambiguous contract exists when provisions "are reasonably or fairly susceptible of different interpretations or

---

[22] Super. Ct. R. 56(e); *Sizemore*, 405 A.2d at 680.

[23] *Sizemore*, 405 A.2d at 681.

[24] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

[25] 25 *Del. C.* § 5101(b); *John Petroleum, Inc. v. Parks*, 2010 WL 3103391, at *4 (Del. Super. June 4, 2010), *aff'd*, 16 A.3d 938 (Del. 2011); *NorKei Ventures, LLC v. Butler-Gordon, Inc.*, 2008 WL 4152775, at *2 (Del. Super. Aug. 28, 2008).

[26] *NorKei Ventures*, 2008 WL 4152775, at *2.

[27] *John Petroleum.*, 2010 WL 3103391, at *4 (quoting *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del. 1996)).

6

may have two or more different meanings . [Furthermore, t]he true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."[28]

Mr. Tang does not dispute his failure to pay rent; rather, he presents two affirmative defenses that he contends excused his duty to pay.[29] First, he contends that Dover Mall's voluntary closure, four days before the first executive order, excused his duty to pay. He maintains that a voluntary closure for public safety reasons did not fall within one of the circumstances contemplated in the lease's *force majeure* provision.[30] Second, he contends that his duty to pay rent was excused because of Dover Mall's declining occupancy rates between 2014 and 2020 (prior to the pandemic) which made it untenable for him to continue to operate his business.[31]

When interpreting the scope of the lease's *force majeure* provision, the Court has the benefit of two pandemic-related mall closure decisions where courts applied an identical clause. First, the Superior Court previously examined the same provision in *Simon Prop. Grp., L.P. v. Regal Ent. Grp.*.[32] At the motion to dismiss stage, the court held that the COVID-19 pandemic was not an event that excused the tenant from making payments.[33] There, the court found that the provision allocated

---

[28] *Id.* (quoting *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

[29] Def.'s Aff. (D.I. 12)

[30] *Id.* at 5–7; D.I. 12 at ¶ 3.

[31] D.I. 4; D.I. 12 at ¶ 4; *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 113 (Del. 2006) (explaining that the doctrine of commercial frustration excuses future performance by providing "where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary." (quoting Restatement (Second) of Contracts § 265 (1981))).

[32] 2022 WL 2304048 (Del. Super. June 27, 2022), *as corrected* (July 6, 2022).

[33] *Id.* at *7.

7

the risk of the pandemic to the tenant, which foreclosed the defenses of frustration of purpose, impossibility, and impracticability.[34]  As the court recognized, the lease's *force majeure* clause broadly allocated the risk to the tenant for "restrictive governmental laws or regulations" and "other reason[s] of a like nature not the fault of the party delayed in performing work" to the tenant.[35]  As a final observation, the *Simon Property* court recognized that unlike residential leases, commercial leases may broadly and disproportionately allocate risk to one party.[36]

The second court that examined an identical clause did so in *1600 Walnut Corp. v. Cole Haan Co. Store*.[37]  There, the Federal District Court for the Eastern District of Pennsylvania examined the same provision as in Mr. Tang's lease and held that it allocated the risk of the pandemic to the tenant.[38]  The court held that (1) the Pennsylvania Governor's COVID-19 orders constituted government regulation which fell within the clause, and (2) the pandemic, itself, independently fell within the clause's catch-all provision.[39]

In Mr. Tang's case, the Governor's executive order also falls squarely within his lease's *force majeure* because it qualifies as governmental law or regulation. Although the lease's terms may seem harsh, the parties expressly agreed to relieve

---

[34] *Id*. at *5.

[35] *Id*.

[36] *Id*. at *6; *see also Simon Prop. Grp., L.P. v. Brighton Collectibles*, LLC, 2021 WL 6058522, at *7 (Del. Super. Dec. 21, 2021) (explaining that although the *force majeure* clause examined in that case (which mirrors the one in Mr. Tang's case) was very broad, a commercial lease is unlike a residential adhesion contract because "[t]he parties in the action are presumed to be sophisticated parties.")

[37] 530 F. Supp. 3d 555 (E.D. Pa. 2021).

[38] *Id*. at 559.

[39] *See id.* (explaining that the COVID-19 pandemic also falls within the defined *force majeure* events of the lease under the catch-all provision "another reason not the fault of or beyond the reasonable control of the party delayed."); *see also Brighton Collectibles,* 2021 WL 6058522 at *7 (Del. Super. Dec. 21, 2021) (finding *Cole Haan* persuasive and agreeing that the same broad *force majeure* clause included closures resulting from the pandemic – regardless of whether the government or the landlord directed the closure).

Dover Mall of its obligation to provide Mr. Tang access to the premises during the State-required closure. Conversely, the parties agreed that Mr. Tang assumed the risk of such a closure by agreeing to pay rent during that time and when the State separately required that his salon be closed.

Likewise, Dover Mall's decision to close the mall four days before the Governor's first order constituted a *force majeure* event under the catch all terms of the clause.[40] Moreover, even if those four days did not fall within the clause's catch all provision, the Mall's decision to close early in March 2020 is of no consequence because Dover Mall seeks no unpaid rent before April 2020.[41] In other words, any dispute regarding the Mall's early closure is not a *material* issue of fact.

In a separate but related matter, Mr. Tang contends that his obligation to pay rent during the pandemic was also excused because of events well before the pandemic – namely, he alleges that declining occupancy rates and decreased foot traffic in the mall left his business "mortally wounded."[42] Here, Mr. Tang paid his rent timely until April 2020. That makes any alleged frustration of purpose based upon events preceding his default immaterial. Furthermore, Mr. Tang filed no counterclaim, and his answer requested no setoff, for rent paid prior to April 2020. Finally, there is no causal nexus between the mall's prior declining occupancy and the pandemic-related closure. As a matter of law, Dover Mall's declining occupancy rates between 2014 and early 2020 did not frustrate the purpose of Mr. Tang's tenancy during the time Dover Mall seeks damages for unpaid rent from April 2020 through the present.

Because there are no genuine issues of material fact regarding Mr. Tang's liability for breach of the lease, the analysis turns to damages. Here, Mr. Tang

---

[40] D.I. 4.
[41] Pl.'s Mot. Summ. J. (D.I. 10), Ex. B.
[42] D.I. 12.

concedes the accuracy of Dover Mall's calculations in the schedule attached to its motion for summary judgment.[43]   He contests only Dover Mall's alleged failure to mitigate.

Before addressing the Mall's duty to mitigate, there was a threshold issue that the parties did not address.  Namely, if a tenant surrenders a leased premises early, and the landlord accepts the leased premises without reservation, the landlord generally waives its right to seek rent for the balance of the lease term.[44] Nevertheless, there is an exception to that general rule when a commercial lease contains an acceleration clause.[45]   Although the parties did not address the issue, Section 18.2 of the lease unequivocally entitles Dover Mall to seek unpaid rent for the balance of the lease's term.[46]

Turning back to Dover Mall's common law duty to mitigate, under Delaware law, a plaintiff has the duty to mitigate his or her damages when feasible.[47]   This general rule requires parties to avoid unreasonable costs that they could have avoided through reasonable efforts.[48]  In the context of a commercial lease, a landlord's duty to mitigate requires it to take reasonable efforts to relet the property unless the parties expressed a clear intent to release that duty through contract.[49]   Typically, the

---

[43] *See* D.I. 10, Ex. B.

[44] *Shore Invs., Inc. v. Bhole, Inc.*, 2011 WL 5967253, at *11 (Del. Super. Nov. 28, 2011), *amended*, 2012 WL 2337793 (Del. Super. Apr. 9, 2012), *aff'd in part*, *rev'd on other grounds*, 67 A.3d 444 (Del. Mar. 13, 2013).

[45] *See Conner v. Jordin*, 181 A. 229 (Del. Super. 1935) (recognizing an exception where the landlord "expresses an intention to hold the tenant for rent, or . . . there was some provision in the lease authorizing [the landlord] to re-enter if the property became vacant."); *see also Vineyards 3E Holdings, L.L.C. v. Rehoboth Art League, Inc.*, 2016 WL 6700414, at *2 (Del. Super. Nov. 7, 2016) (recognizing that a party cannot sue for future rent without an acceleration clause).

[46] D.I. 16 at § 18.2.

[47] *NorKei Ventures*, 2008 WL 4152775, at *2; *John Petroleum*, 2010 WL 3103391, at *6.

[48] *John Petroleum*, 2010 WL 3103391, at *6 (quoting *West Willow–Bay Court, LLC v. Robino–Bay Court Plaza, LLC*, 2009 WL 458779, at *4 (Del. Ch. Feb.23, 2009)).

[49] *See B & G Properties Ltd. P'ship v. Off. Max, Inc.*, 3 N.E.3d 774, 785 (Ohio Ct. App. 2013) (finding no duty to mitigate damages where the commercial lease expressed a clear intent to waive the landlord's common law duty to mitigate damages by reletting the premises); *see also Braintree*

defendant bears the burden to prove this affirmative defense.[50] To survive a motion for summary judgment on this basis, the defendant must demonstrate that (1) the landlord retained its common law duty to mitigate damages, and (2) a factual dispute remains regarding whether it failed to do so.[51]

Here, Mr. Tang's affirmative defense fails at the summary judgment stage because two separate provisions in the lease relieved Dover Mall of its duty to relet the premises. First, the lease provides the following:

> [i]n determining the rental value of the Premises, the rental realized by reletting, if such reletting be accomplished by Landlord within a reasonable time after the termination of this Lease, shall be deemed prima facie to be the rental value, *but if Landlord shall not undertake to relet or having undertaken to relet, has not accomplished reletting, then it will be conclusively presumed* that the Minimum rent and all items of additional rent reserved under this Lease represent the rental value of the Premises for the purposes herein (in which event Landlord may recover from Tenant, *the full total of all Minimum Rent and all items of additional rent due hereunder*…).[52]

Second, the lease provides that "nothing contained herein shall obligate Landlord to relet if Tenant shall default hereunder."[53] Combined, these terms relieved Dover Mall of its common law obligation to mitigate its damages by reletting. Aside from Mr. Tang's contention that Dover Mall should have relet the

---

*Prop. Assocs., LP v. Marzouki*, 2017 WL 5329880, at *3 (Mass. Super. Sept. 26, 2017) (explaining that commercial parties can agree to obviate a landlord's duty to mitigate damages); *Regency Realty Corp. v. Carriage Shop, Inc.*, 2002 WL 338852, at *3 (Tex. App. Mar. 5, 2002) (recognizing that a landlord owes the general duty to mitigate unless the commercial landlord's and tenant's contract provides otherwise); *In re Cornwall Paper Mills Co.*, 169 B.R. 844, 853 (Bankr. D.N.J. 1994) (confirming a commercial landlord's duty to mitigate absent a contract provision releasing the obligation).

[50] *Tanner v. Exxon Corp.*, 1981 WL 191389, at *4 (Del. Super. July 23, 1981).

[51] *Hena v. Vandegrift*, 612 F. Supp. 3d 457, 497 (W.D. Pa. 2020).

[52] D.I. 16 at § 18.2. (emphasis added).

[53] *Id.* (emphasis added); *see Braintree*, 2017 WL 5329880, at *3 (finding, under a substantially similar lease provision, that the tenant expressly agreed to release the landlord's duty to mitigate damages).

premises, he alleges no other omission by Dover Mall that could have risen to the level of a failure to mitigate.

Finally, Dover Mall provides a schedule itemizing the rent due, broken down into its various components,[54] thereby satisfying its initial burden on summary judgment. Because Mr. Tang identifies no material issue of fact regarding the schedule's accuracy, summary judgment in the amount of $276,089.72 in Dover Mall's favor must be granted.

## Conclusion

For the reasons discussed above, the commercial lease in this case allocated the risk to Mr. Tang for the government-required pandemic closure. That allocation of risk and the separate lease provisions that relieved Dover Mall of its obligation to relet the premises require judgment on behalf of Dover Mall as a matter of law. As a result, summary judgment in favor of Plaintiff Dover Mall, LLC must be **GRANTED.**

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

JJC:klc
*Via File & ServeXpress*
*U.S. Mail to Defendant Sam Tang*

---

[54] D.I. 10, Ex. B.