# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: January 22, 2025
Date Decided: January 31, 2025

Peter B. Ladig, Esquire
Abraham C. Schneider, Esquire
Bayard, P.A.
600 North King Street, Suite 400
Wilmington, Delaware 19801

Sidney S. Liebesman, Esquire
Joshua K. Tufts, Esquire
Fox Rothschild LLP
1201 Market Street, Suite 1200
Wilmington, Delaware 19801

> RE:   *Rick Henricus van den Wildenberg v. Sign-Zone Holdings, L.P., et al.*,
> C.A. No. 2024-0399-BWD

Dear Counsel:

The plaintiff in this action, Rick Henricus van den Wildenberg ("Plaintiff"), was an investor in Sign-Zone Holdings, L.P. ("Sign-Zone"), a Delaware limited partnership. In 2021, Sign-Zone undertook a capital financing round and Plaintiff chose not to participate. Sign-Zone performed better than expected, and nearly three years later, Plaintiff filed this lawsuit, asserting claims for negligent misrepresentation. Those claims rest on the allegation that when Plaintiff was asked to invest, he was given unduly pessimistic financial projections that misrepresented the financial condition of the company. Because Plaintiff's complaint does not allege a false statement of fact, nor does it allege the omission of a material fact in

the face of a duty to speak, it fails to state claims for negligent misrepresentation and must be dismissed.

## I.    BACKGROUND[1]

In April 2019, Plaintiff, Promic Holding B.V., and defendant Showdown Displays Europe B.V. ("Showdown") executed a Share Purchase Agreement (the "SPA") through which Plaintiff and Promic Holding B.V. sold, and Showdown purchased, all outstanding shares of Promic B.V., a Netherlands limited liability company.  Compl. ¶¶ 3, 14–16.  In connection with the SPA, Plaintiff received partnership units of defendant Sign-Zone, a Delaware limited partnership.  *Id.* ¶¶ 2, 17.

In April 2021, Sign-Zone's Chief Executive Officer, John Bruellman,[2] informed Plaintiff that Sign-Zone was undertaking a capital financing round (the "Capital Infusion").  *Id.* ¶ 26.  Sign-Zone sent Plaintiff a document titled

---

[1] The following facts are taken from Plaintiff's Verified Complaint (the "Complaint") and the documents incorporated by reference therein.  Verified Compl. [hereinafter Compl.], Dkt. 1; *see Allen v. Encore Energy P'rs*, 72 A.3d 93, 96 n.2 (Del. 2013) ("A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint . . . ." (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 612 (Del. 1996))).

[2] Plaintiff explains that "[t]he Complaint erroneously stated that Mr. Bruellman was the CFO for Pfingsten Partners.  Mr. Bruellman is the CEO for Sign-Zone."  Pl.'s Answering Br. in Opp. to Defs.' Mot. to Dismiss Pl.'s Verified Compl. [hereinafter PAB], Dkt. 16.

"Presentation to Sign-Zone Unitholders" (the "Unitholder Presentation"), setting a May 17, 2021 deadline to participate in the Capital Infusion. *Id.* ¶ 26; *see also id.*, Ex. 5 at 1. The Unitholder Presentation stated that "Sign-Zone's EBITDA declined 73% in 2020 to $5.4 million, from $19.8 million in 2019," and that "[c]urrent outstanding debt of $81.8 million (as of 3/31/21) must be repaid before the Preferred Units or Common Units [issued in the Capital Infusion] have any value." *Id.* ¶ 27; *id.*, Ex. 5 at 4–5. The Unitholder Presentation further stated that "[t]he value of Common Units of Sign-Zone outstanding prior to the new capital commitment is $0" and "the Common Units are projected to have immaterial value, if any, through at least 2023." *Id.*, Ex. 5 at 5, 12.

The Unitholder Presentation included three sets of financial projections—a "Base Case," an "Upside Case," and an "Extended Recovery Case"—forecasting EBITDA through the end of 2023. *Id.*, Ex. 5 at 18. The "Base Case" forecasted 2023 EBITDA of $15,800,000 and the "Upside Case" forecasted 2023 EBITDA of $22,480,000. *Id.* ¶ 27(c).

On April 22, 2021, Sign-Zone provided a financial report showing an "immense" $38,800,000 write-off of Sign-Zone's intangible assets, resulting in a negative equity value of $12,600,000 as of the end of March 2021. *Id.* ¶ 28. A few days later, Plaintiff's advisor spoke with Bruellman, who, "referencing the March

Report, suggested the company was facing a difficult situation and conveyed it also purportedly had bad projections for future performance." *Id.*

Sign-Zone also provided Plaintiff with an audited financial report on May 17, 2021, the deadline to participate in the Capital Infusion. *Id.* ¶ 38. "Given [Sign-Zone]'s purportedly dismal prospects, and having already invested a substantial sum in the Company," Plaintiff elected not to participate in the Capital Infusion. *Id.* ¶ 29.

Ultimately, Sign-Zone outperformed the projections in the Unitholder Presentation. *Id.* ¶ 36. Sign-Zone's actual 2023 EBITDA was $27,117,561—71% higher than the Base Case and 21% higher than the Upside Case forecasted in the Unitholder Presentation. *Id.* (citing *id.*, Ex. 5 at 18).

In April 2024, Plaintiff learned of a "Quantitative Impairment Analysis," dated as of December 31, 2020, to which other limited partners, including defendants Pfingsten Partners Fund V, L.P. and Pfingsten Partners Fund V-A, L.P. (the "Pfingsten Funds"), had access. *Id.* ¶¶ 5–6, 31. According to Plaintiff, the Quantitative Impairment Analysis painted "a more optimistic financial portrait" of Sign-Zone than the Unitholder Presentation had. *Id.* ¶ 31. Namely, "[p]rojected EBITDA for end-of-year 2023 in [the Quantitative Impairment Analysis] was

$20,740,000, 31% higher than the Base Case EBITDA in the [Unitholder Presentation]." *Id.*

Plaintiff also learned that Sign-Zone "had performed no valuation of the Company in connection with the Capital Infusion in April 2021" and that "all other limited partners had already committed their pro rata portion of the Capital Infusion" when Plaintiff was asked to invest. *Id.* ¶¶ 33–34.

On April 16, 2024, Plaintiff initiated this action through the filing of the Complaint. Dkt. 1. Count I of the Complaint alleges a claim for "misrepresentation" against Sign-Zone, the Pfingsten Funds, Showdown, and Sign-Zone's general partner, Sign-Zone Holdings GP DE L.L.C. ("Sign-Zone GP," and collectively, "Defendants"). Compl. ¶¶ 4, 42–48. Count II alleges a claim for "misrepresentation" against Sign-Zone GP. *Id.* ¶¶ 49–55.

On May 14, 2024, Defendants moved to dismiss the Complaint (the "Motion to Dismiss").[3] The parties' briefing clarifies that Plaintiff's "misrepresentation"

---

[3] Dkt. 5. Defendants filed their Opening Brief in Support of Defendants' Motion to Dismiss Plaintiff's Verified Complaint on July 26, 2024. Dkt. 13 [hereinafter DOB]. Plaintiff filed his Answering Brief in Opposition to Defendants' Motion to Dismiss Plaintiff's Verified Complaint on September 6, 2024. On September 24, 2024, Defendants filed their Reply Brief in Support of Defendants' Motion to Dismiss Plaintiff's Verified Complaint. Dkt. 19 [hereinafter DRB].

counts are claims for negligent misrepresentation (referred to interchangeably as equitable fraud). The Court heard oral argument on January 22, 2025. Dkt. 25.

## II. ANALYSIS

When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

"Court of Chancery Rule 9(b) imposes a heightened pleading standard on plaintiffs asserting fraud claims." *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *24 (Del. Ch. Feb. 27, 2020). Rule 9(b) requires "a party . . . [to] state with particularity the circumstances constituting fraud." Ct. Ch. R. 9(b). "Under Rule 9(b), the circumstances that must be stated with particularity are the time, place, and contents of the false representation, the identity of the person(s) making the representation, and what he intended to obtain thereby." *H-M Wexford v. Encorp, Inc.*, 832 A.2d 129, 145 (Del. Ch. 2003) (citations omitted). "It is not necessary

under Rule 9(b) to plead knowledge or intent with particularity[.]" *KnighTek, LLC v. Jive Commc'ns, Inc.*, 225 A.3d 343, 353 (Del. 2020).

> Under Delaware law, a claim for fraud has five elements:
>
> (1) a false statement, generally of fact, made by the defendant; (2) the defendant's knowledge or belief that the statement was false at the time it was made, or the defendant's reckless indifference to [the] statement's truth; (3) the defendant's intent to cause the plaintiff to act or refrain from acting as a result of the statement; (4) the plaintiff's justifiable reliance on that statement in acting or in refraining from acting; and (5) damages incurred as a result of that reliance.

*Neurvana Med., LLC*, 2020 WL 949917, at *23. Equitable fraud "requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'" *Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at *7 (Del. Ch. June 6, 2006) (quoting *H-M Wexford*, 832 A.2d at 144). The scienter requirement is substituted for the presence of "(i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015) (quoting *Envo, Inc. v. Walters*, 2009 WL 5173807, at *6 (Del. Ch. Dec. 30, 2009)). In other words,

> [t]o state a claim for negligent misrepresentation, a plaintiff must show: (1) 'a particular duty to provide accurate information, based on the plaintiff['s] pecuniary interest in that information;' (2) 'the supplying

of false information;' (3) 'failure to exercise reasonable care in obtaining or communicating information; and' (4) 'a pecuniary loss caused by justifiable reliance on the false information.'

*Neurvana Med., LLC*, 2020 WL 949917, at \*23 (quoting *H-M Wexford*, 832 A.2d at 147 n.44.

The Complaint here fails to state claims for negligent misrepresentation because it does not allege a false statement of fact, nor does it allege the omission of a material fact in the face of a duty to speak.[4]

Plaintiff's misrepresentation claims are premised on forward-looking financial projections in the Unitholder Presentation. Compl. ¶ 27. "Predictions about the future" generally are not *facts* that can give rise to an actionable misrepresentation claim, however. *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001).[5] While Plaintiffs point out that "forward-

---

[4] Defendants contend, among other arguments, that "Plaintiff waived all claims other than claims for fraud against the Defendants" under a "waiver of liability" provision in Section 6.4 of Sign-Zone's limited partnership agreement. *See* DRB at 3–8. That argument, raised for the first time in Defendants' reply brief, arguably is, itself, waived. *See, e.g., LCT Cap., LLC v. NGL Energy P'rs LP*, 249 A.3d 77, 101–02 (Del. 2021, *revised* Mar. 4, 2021) (holding that a legal argument raised for the first time in a reply brief was waived); *Pryor v. IAC/InterActiveCorp.*, 2012 WL 2046827, at \*6 n.71 (Del. Ch. June 7, 2012) ("Normally, this court does not entertain arguments raised for the first time in a reply brief."). The Court does not need to resolve Defendants' waiver argument because Plaintiff's claims fail for a simpler reason—the absence of allegations supporting an actionable false representation or omission.

[5] *See also Consol. Fisheries Co. v. Consol. Solubles Co.*, 112 A.2d 30, 37 (Del. 1995) ("It is the general rule that mere expressions of opinion as to probable future events, when

looking statements can support a claim of fraud where the declarant knows the statement to be false at the time it is made,"[6] the Complaint here does not allege that any statement in the Unitholder Presentation was untrue.[7]

Plaintiff instead argues that Defendants "misrepresented Sign-Zone's financial portrait" by "paint[ing] a dismal picture of [Sign-Zone]" while omitting

---

clearly made as such, cannot be deemed fraud or misrepresentations."); *Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *12 (Del. Ch. June 6, 2018) (dismissing fraud claim where "the alleged misrepresentations concern[ed] the future profitability of [a business unit] and the future performance of its management team" because whether the revenue projections "would, in fact, be achieved was not *knowable* at the time [the defendants] made the representations"). The Unitholder Presentation here made clear that "financial projections and other forward-looking statements involve known and unknown risks, uncertainties, assumptions and other factors, which may cause the Company's actual results, performance or achievements to be materially different from any financial projections or other future results, performance or achievements expressed or implied by such forward-looking statements"; "all forward-looking statements should be evaluated with an understanding of their inherent uncertainty"; "there can be no assurance that the Company will achieve results as presented herein"; and "[t]here is no obligation for the Company or any other person to update or alter the financial projections and other forward-looking statements, whether as a result of new information[,] future events or otherwise." Compl., Ex. 5 at 2.

[6] *Neurvana Med., LLC*, 2020 WL 949917, at *25 (first citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006); and then citing *KnighTek, LLC*, 225 A.3d at 353 (Del. 2020)).

[7] *See Snyder v. Butcher & Co.*, 1992 WL 240344, at *11 (Del. Super. Ct. Sept. 15, 1992) (sustaining a fraud claim based on a private placement memorandum containing profitability projections for a radio station's plan to expand its FM antenna signal, where the memorandum allegedly falsely represented that "[t]he FM stations w[ould] transmit from its new location and reach most of the St. Louis market" on a particular date, which did not occur). The Complaint similarly does not allege that Bruellman's statements to Plaintiff's advisor were not true when they were made, or that any statement in the March 2021 financial report that Bruellman referenced was not true. Compl. ¶ 28.

"more optimistic" projections in the Quantitative Impairment Analysis. PAB at 1–2, 12, 18–19. In other words, Plaintiffs' theory is not based on an affirmative misstatement, but on an omission.

"[F]raud does not consist merely of overt misrepresentations. It may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). "A 'party to a business transaction is under a duty to . . . disclose to the other [party] before the transaction is consummated . . . subsequently acquired information that [the speaker] knows will make untrue or misleading a previous representation that when made was true . . . .'" *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013) (emphasis omitted) (quoting Restatement (Second) of Torts § 551 (1997)). The forward-looking projections in the Quantitative Impairment Analysis were not "subsequently acquired information"—again, the projections themselves were not "facts." And the Complaint does not even allege that the Quantitative Impairment Analysis projections were *premised* on new *facts* about the business that rendered assumptions underlying the prior projections false or misleading. *See id.* at 315 (explaining that a fiduciary may have a duty to speak when buying or selling stock when it is "possessed of special knowledge of future plans or secret resources" that

constitute "special facts" and "deliberately misleads a stockholder who is ignorant of them").

Rather than allege that some fact in the Quantitative Impairment Analysis rendered the Unitholder Presentation false or misleading, Plaintiff takes a different tack, arguing Defendants had a duty to provide Plaintiff with the Quantitative Impairment Analysis because the projections therein would have been "material" to investors deciding whether to participate in the Capital Infusion.[8] But even if materiality were the right standard for a negligent misrepresentation claim premised on an omission, the Complaint does not support a reasonably conceivable inference that the projections in the Quantitative Impairment Analysis were material. To be material, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (emphasis omitted) (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)). Although the Complaint characterizes the Quantitative Impairment Analysis projections as "more optimistic" compared to the "unduly conservative" projections in the Unitholder

---

[8] *See* PAB at 23–30 (citing cases addressing the materiality of projections in connection with claims for breach of the fiduciary duty of disclosure).

Presentation, projected EBITDA for 2023 fell *between* the Unitholder Presentation's

Base Case and Upside Case:

- Unitholder Presentation Base Case: $15,800,000

- Quantitative Impairment Analysis: $20,740,000

- Unitholder Presentation Upside Case: $22,480,000

- Actual 2023 EBITDA: $27,117,561

Compl. ¶¶ 27, 31–32, 36. Plaintiff fails to explain how the projections in the

Quantitative Impairment Analysis—prepared for audit purposes on behalf of a

different entity[9]—would have altered the total mix of information in light of the

projections that were already provided in the Unitholder Presentation.[10]

---

[9] The Quantitative Impairment Analysis indicates that it was prepared for "Sign-Zone Acquisition LLC." Compl., Ex. 6 at 1.

[10] The Complaint also alleges that Sign-Zone did not disclose to Plaintiff that it had not performed a valuation of the company in connection with the Capital Infusion in April 2021, and that Sign-Zone did not share that all other limited partners had already committed to participate in the Capital Infusion. Compl. ¶¶ 33–34. However, in his Answering Brief, Plaintiff argues only that Sign-Zone was obligated to disclose the Quantitative Impairment Analysis to Plaintiff at the time of the Capital Infusion. PAB at 23–30. These other arguments are therefore waived. *See, e.g.*, *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived"); *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 68 n. 133 (Del. Ch. 2015) (finding that two issues alleged in a count in the complaint were waived because plaintiff did not advance any argument in its brief concerning the issues).

Because the Complaint fails to allege a false statement of fact, or an omission that rendered a statement of fact in the Unitholder Presentation misleading, Plaintiff's negligent misrepresentation claims must be dismissed.

## III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED and the Complaint is DISMISSED.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:    All counsel of record (by File & ServeXpress)